[Civ. No. 4650.   Second Appellate District, Division One.—March 20, 1926.]

## NAOMI SCHULTZ MILES, Respondent, v. SUE MILES et al., Appellants.

[1] CONTRACTS — PERFORMANCE — EVIDENCE — FINDINGS — APPEAL. On this appeal from a judgment in favor of the plaintiff, in an action to recover upon a contract to pay certain moneys to and for the use of plaintiff, conditioned upon her husband departing from this state and going to another state and associating himself with his father in an agricultural enterprise, it not being contended by defendants that the evidence was insufficient to support the findings, they were conclusive as to the facts; and the trial court having found that within thirty days from the date of the agreement the son and father were living upon the ranch in said other state, and that the son "did associate himself with said agricultural enterprise," which the trial court further found was "a reasonable time under all the circumstances," there was no merit in defendants' contention that the contract was never carried out, in that the son did not go direct to the ranch, but went first to a city in an adjoining state, where he remained for several days before proceeding to the ranch.

[2] ID.—CONSIDERATION—ATTEMPT TO COMMIT FRAUD—PERFORMANCE. Where plaintiff gave a valuable consideration for the benefits that were to accrue to her under the agreement, and no fraud was actually committed by said son (plaintiff's husband), and within a reasonable time after the agreement was entered into he fully performed the acts which he was obligated to perform, the mere fact that he made an unsuccessful attempt to commit a fraud upon his parents by not performing in good faith the acts which he was obligated to perform would not be sufficient to justify his parents in taking advantage of that fact to the extent of denying to plaintiff the rights to which she was entitled in accordance with the terms of the agreement.

[3] ID.—BENEFIT OF THIRD PERSON—ESTABLISHMENT OF RIGHT.—In order that a person may be entitled to enforce a benefit derivable from an agreement entered into by other persons, it is not necessary that such contract be made exclusively for the benefit of the person seeking to establish such right, but it is sufficient if among the benefits arising from the performance of the agreement there exists the right sought to be established.

---

3.  See 6 **Cal. Jur.** 471; 6 **R. C. L.** 889.

[4] ID.—PARTIES—EVIDENCE—FINDINGS.—In this action to recover upon a contract to pay certain moneys to and for the use of plaintiff, conditioned upon plaintiff's husband departing from this state and going to another state and associating himself with his father in an agricultural enterprise, plaintiff's mother-in-law having testified that she "put up the moneys" that was held by a trustee pursuant to the terms of the contract, that she did the greater part of the talking, and that her "whole heart was set" on getting her "boy" away, and other evidence introduced at the trial having shown that all the acts performed by her husband and by said trustee in the matter were at her instigation and request, the court was justified in finding that she entered into the agreement.

[5] ID.—BREACH BY TRUSTEE—LIABILITY TO BENEFICIARY.—Where said trustee was selected by agreement of all the parties to hold the funds placed in his keeping for the purpose of paying them to plaintiff upon the happening of the contingencies specified in a memorandum which he executed and delivered to plaintiff, and the circumstances surrounding his appointment were such that it must be presumed that it was partly because of the representation made to plaintiff by him as to his own trustworthiness, and that he was acting for plaintiff, that plaintiff was induced to agree to the arrangement by which he was to handle the monetary part of the transaction, and the conditions of the contract on the part of plaintiff having been performed, said trustee breached the agreement when, in violation of the trust imposed in him, he returned the money to plaintiff's mother-in-law, and his liability therefor followed as a matter of course.

[6] ID.—REPUDIATION—MEASURE OF RECOVERY.—The fact that the entire sum placed in the keeping of said trustee was not to be paid to plaintiff, but that a part thereof was to be paid on account of debts owing to her, did not affect plaintiff's right to recover the entire sum, where upon the compliance with the conditions of the contract by plaintiff and her husband the money was to become the property of plaintiff, subject, in part, to be paid out in accordance with her directions, and defendants breached and repudiated the agreement.

[7] ID.—BREACH OF AGREEMENT—MONEY HAD AND RECEIVED—PLEADING—EVIDENCE—JUDGMENT—APPEAL.—In such action, where plaintiff's first cause of action based upon breach of agreement by defendants was unquestioned as to its sufficiency, it having been proven on the trial of the action and been sustained by the appellate court, it was immaterial whether plaintiff's second cause of action for money had and received, affecting the same transaction, could be sustained.

[8] ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—AFFIDAVITS—DIS-
CRETION.—In such action, the granting or denial of defendants'
motion for a new trial on the ground of newly discovered evi-
dence rested within the sound discretion of the trial court where
the substance of such "newly discovered evidence" was contained
within certain affidavits filed by defendants, and a counter-affidavit
by plaintiff contradicted practically each material fact set forth
in the affidavits presented by defendants.

(1) 4 C. J., p. 876, n. 78; 13 C. J., p. 798, n. 63.  (2) 13 C. J.,
p. 611, n. 98.  (3) 13 C. J., p. 705, n. 4, p. 707, n. 10, p. 709, n. 29.
(4) 13 C. J., p. 776, n. 96.  (5) 39 Cyc., p. 295, n. 10.  (6) 17 C. J.,
p. 847, n. 60, p. 848, n. 61.  (7) 4 C. J., p. 1061, n. 32.  (8) 29 Cyc.,
p. 1008, n. 48, p. 1009, n. 54.

APPEAL from a judgment of the Superior Court of
Los Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

Schweitzer & Hutton and H. S. Clewett for Appellants.

Joseph H. Call, Asa V. Call and Anderson & Anderson
for Respondent.

HOUSER, J.—This is an appeal from a judgment in
favor of plaintiff against the defendants Sue Miles and
James E. Kelby for the sum of $2,500.

The action originally included Joseph Harvey Miles as
one of the defendants. Judgment was rendered in his favor,
and no appeal has been prosecuted therefrom. The defend-
ants Sue Miles and Joseph Harvey Miles are husband and
wife, and plaintiff is the divorced wife of Warren Miles,
who is the son of Sue Miles and Joseph Harvey Miles. The
complaint is in two counts, by the first of which a judgment
is sought for damages for breach of contract alleged to have
been made by the three defendants with Warren Miles for
the benefit of plaintiff; and the second count of the com-
plaint states a cause of action on account of money had and
received by the three defendants for the use of plaintiff.
The findings of fact by the trial court, although somewhat

8. See 20 Cal. Jur. 81.

lengthy, nevertheless tell the whole story. They are in part as follows:

"That on or about March 21, 1921, defendant, Sue Miles, entered into an agreement with Warren C. Miles, the son of defendant Sue Miles and Joseph Harvey Miles, for the use and benefit of plaintiff, Naomi Schultz Miles; and that on or about said date, Sue Miles entered into an agreement with Naomi Schultz Miles, directly, both of which agreements are in substance as follows: That Sue Miles would pay to Naomi Schultz Miles the sum of two thousand five hundred ($2500.00) dollars which sum was to be in full satisfaction of a certain three thousand ($3000.00) dollar obligation then owing from Warren C. Miles to Naomi Schultz Miles upon the happenings in the manner and at the times following:

"Warren C. Miles was to proceed to Falls City, Nebraska, and upon his arrival there, seven hundred fifty ($1750.00) dollars was to be expended from said sum of $2500.00 to redeem a diamond ring of Naomi Schultz Miles, then in pawn for that amount; a sum not exceeding one hundred fifty ($150.00) dollars was to be expended from said total sum of two thousand five hundred ($2500.) dollars, to pay interest on an aggregate principal amount of seventeen hundred fifty ($1750.00) dollars, the repayment of which sum of seventeen hundred fifty ($1700.00) dollars was secured by the pledge of five other diamond rings of Naomi Schultz Miles; the sum of six hundred ($600.00) dollars, in cash, was to be paid from said total sum of two thousand five hundred ($2500.00) dollars to Naomi Schultz Miles, and Naomi Schultz Miles agreed that upon the receipt of this money, she would pay to Ross Schultz, her brother, at Omaha, Nebraska, the sum of one hundred fifty ($150.00) dollars and a like amount to one Silvernail, who was a druggist doing business in Ocean Park, California; and that in addition to the foregoing payments, which were to be made upon the arrival of Warren C. Miles at Falls City, Nebraska, the following sums were to be paid in cash to Naomi Schultz Miles at the times specified: $250.00 thirty days after March 21, 1921; 250.00, sixty days after March 21, 1921; 250.00, ninety days after March 21, 1921; 250.00, one hundred twenty days after March 21, 1921.

"That said sum of $2500.00 was to be placed beyond the control of Sue Miles, and in the hands of some third person to be approved by Naomi Schultz Miles, for the purpose of paying it to her upon the happenings, at the times and in the manner above specified.

"That Naomi Schultz Miles and Sue Miles did agree that Sue Miles should deliver the sum of $2500.00 to one James E. Kelby for the purpose of paying it to Naomi Schultz Miles upon the happenings, at the times and in the manner herein set forth, and the said Kelby did accept the said trust and consented to act as trustee and to perform the terms of said trust for the use and benefit of plaintiff; and that in pursuance of the provisions of said agreements, as hereinabove set forth, the said Sue Miles did deposit with said Kelby the sum of $2500.00, upon the terms hereinabove set forth, for the use and benefit of the plaintiff. That said Kelby did accept said sum of $2500.00 for the purpose of paying the same to the plaintiff herein, in the manner hereinabove set forth. That said Kelby to show his good faith toward plaintiff in said matter, and to provide her with a written memorandum of the aforesaid agreements, and to set forth the terms of his trust and obligation to her, made, executed and delivered to plaintiff a certain declaration of his said trust in writing, which is in words and figures as follows:

"To Mrs. Naomi Schultz Miles,

"March 21, 1921.

"This Memo Witnesseth:

"That I, the undersigned, hold and am payee of checks of Mrs. J. H. Miles aggregating $2,500.00 for the purposes specified as follows, and to be paid by me upon the following conditions:

"(1) $750.00 to redeem a diamond ring from pawn, which ring I am to hold until I receive a telegram from Warren C. Miles from and announcing his arrival at Falls City, Nebraska, at which time I am to deliver said ring to Mrs. Naomi Schultz Miles, at Los Angeles, California;

"(2) To pay interest, not exceeding $150.00 on five (5) other diamond rings in pawn for an aggregate principal amount of $1750.00, payable upon the same condition as '(1)' hereof;

"(3) $600.00 cash to Mrs. Naomi Schultz Miles, upon receipt by me of said telegram; it being understood that Mrs. Miles shall pay out of this $150.00 to her brother at Omaha, Nebraska, and the like amount to one Silvernail.

"(4) In addition to the foregoing payments, made as above provided for, I agree to pay to said Mrs. Miles, in person at my office, W. P. Story Building, Los Angeles, California, the following amounts at the following dates respectively, viz.: $250.00 thirty (30) days after date; 250.00 sixty (60) days after date; 250.00 ninety (90) days after date; and 250.00 one hundred twenty (120) days after date.

"(S) James E. Kelby.

"That said Naomi Schultz Miles did repose special confidence in said James E. Kelby and did agree to his acting for her in the manner hereinabove specified because she refused to trust or rely upon Sue Miles. That said monies were delivered to James E. Kelby, in the manner and for the purposes aforesaid, because Naomi Schultz Miles did not trust Sue Miles or have confidence in her, and by reason of the special confidence reposed by her in said James E. Kelby. That in agreeing to the delivery of said monies to James E. Kelby, as aforesaid, Naomi Schultz Miles did rely upon the following statements and representations that this court finds James E. Kelby did make to her, for the purpose of inducing her to enter into said agreement: That he, James E. Kelby, was a trustworthy person, in whom Naomi Schultz Miles could place her confidence; that he was a reputable practicing attorney at law; that he represented a number of large corporations that required a man of special integrity and in whom was reposed unusual confidence, and that when he placed his signature to a document, he could not, by reason of his position in his profession and the community, fail to perform it, and that he would in all respects protect her.

"That the following facts were, at the time of the making of said agreement, well known to the defendants Sue Miles and James E. Kelby. That at the time of the execution of said agreement, Warren C. Miles was the son of defendant, Sue Miles, and was residing in the city of Los Angeles, California. That it was the desire of Sue Miles to have Warren C. Miles proceed to Falls City, Nebraska, and associate himself with an agricultural enterprise near that

town. At said times, Warren C. Miles refused to leave the city of Los Angeles, until he had paid or caused to be paid certain obligations then owing from him to Naomi Schultz Miles, the plaintiff herein. That said obligations consisted of $3000.00, evidenced by a promissory note dated December 30, 1920, executed by Warren C. Miles in favor of Naomi Schultz Miles, for the principal amount of $3000.00, bearing interest at the rate of two per cent per month, payable ninety days from its date. That said three thousand dollar obligations represented cash loaned from Naomi Schultz Miles to Warren C. Miles, to the extent of at least $3000.00, and that a part of which loan were monies borrowed by Naomi Schultz Miles for the use and benefit of and given to Warren C. Miles, and secured by the pledge of jewelry and other personal property of Naomi Schultz Miles.

"That at said times, Naomi Schultz Miles was unwilling to agree to Warren C. Miles leaving the State of California until his obligation to her had been satisfied.

"That at the time of the making of said agreement, Naomi Schultz Miles distrusted and expressed to Sue Miles, Joseph Harvey Miles and James E. Kelby, and each of them, her distrust of Sue Miles and Joseph Harvey Miles, and refused to make or perform any agreement, and in particular refused to agree to permit Warren C. Miles leaving the State of California and canceling her obligation due from him until said Joseph Harvey Miles and Sue Miles should perform and complete the agreement of Sue Miles to pay the sum of $2500.00 to her as above specified, at least, to the extent of placing the payment of the monies specified beyond their control or power in any manner to interfere therewith.

"That said sum of $2500.00 was, on or about March 21, 1921, delivered by Sue Miles to James E. Kelby for the purposes herein set forth.

"That Naomi Schultz Miles did on or about March 22, 1921, cancel and deliver up to Warren C. Miles her said promissory note for $3000.00 and did satisfy the obligation represented thereby.

"That Warren C. Miles did, on or about March 21, 1921, leave the city of Los Angeles and State of California, and did on or before May 1, 1921, which this court finds to be a reasonable time under all the circumstances, proceed to

77 Cal. App.—15

Falls City, Nebraska, and did associate himself with said agricultural enterprise known as the Miles Ranch.

"That Warren C. Miles did communicate by telegram with James E. Kelby, Sue Miles and Naomi Schultz Miles, upon his arrival and announced his arrival at Falls City, Nebraska; and further, that said Warren C. Miles was in the company of and did live with Joseph Harvey Miles, defendant herein, and father of said Warren C. Miles, upon said Miles Ranch near Falls City, Nebraska, within thirty days from March 21, 1921.

"That Sue Miles and James E. Kelby, and each of them, have frequently been requested by plaintiff, Naomi Schultz Miles, to perform the said agreements as hereinabove specified, and in particular to pay said sum of $2500.00 to her in the manner, upon the happenings and at the times as hereinabove specified.

"That Sue Miles and James E. Kelby, and each of them, have failed and refused, and still fail and refuse to pay to plaintiff, Naomi Schultz Miles, the said sum of $2500.00 or any part thereof upon the happenings, at the times, in the manner and subject to the conditions hereinabove set forth, or at all, and that no part thereof has been paid to or on behalf of the plaintiff in any manner whatsoever.

"That after the performance of all the acts and things hereinabove set forth, and in particular, after Warren C. Miles had proceeded to and arrived at Falls City, Nebraska, and after said three thousand dollar note had been delivered up and cancelled and the obligation represented thereby satisfied, defendant, Sue Miles, did notify James E. Kelby that said sum of $2500.00 should be returned to her and that no part thereof should in any manner be paid to the plaintiff. That James E. Kelby, prior to the commencement of this action, did deliver said sum of $2500.00 to Sue Miles.

"That plaintiff has been damaged in the sum of $2500.00.

"That on or about the 21st day of March, 1921, the defendant, Sue Miles, and the defendant, James E. Kelby, and each of them became indebted to the plaintiff for and on account of money had and received to and for the use and benefit of the plaintiff in the sum of $2500.00, and that said sum of $2500.00 is now due from the said defendants and each of them to said plaintiff; that plaintiff has repeatedly demanded the payment of said sum of $2500.00, but

that defendants and each of them have refused and still refuse to pay the same or any part thereof; that the same is now due and owing from the defendants to plaintiff."

[1] It is not contended by appellants that the evidence is insufficient to support the findings. They must therefore be accepted as conclusive as to the facts.

Appellants suggest that no recovery may be had by plaintiff because the contract "was never carried out." It is claimed that Warren Miles breached the agreement entered into for the benefit of plaintiff in that when Warren Miles left the city of Los Angeles, instead of going directly to the ranch in Nebraska, he went to Kansas City, where he remained for several days, and then proceeded to the ranch for the purpose only of sending a telegram to defendant Kelby in accordance with the terms of the memorandum given by defendant Kelby to plaintiff, and that immediately thereafter the said Warren Miles returned to Kansas City. But the findings of fact are that within thirty days from the date of the agreement the son and the father were living upon the ranch, and that the son "did associate himself with said agricultural enterprise"; which the trial court further found was "a reasonable time under all the circumstances." Appellants' point, therefore, cannot be sustained.

[2] It is next urged that defendants Sue Miles and Joseph Harvey Miles rescinded the contract because Warren Miles had attempted to defraud them by not carrying out the terms of the agreement, and consequently that plaintiff may not recover. But the mere fact (assuming it to be such) that Warren Miles made an unsuccessful attempt to commit a fraud upon his parents by not performing in good faith the acts which he was obligated to perform would not be sufficient to justify the parents in taking advantage of that fact to the extent of denying to plaintiff the rights to which she was entitled in accordance with the terms of the agreement. Plaintiff was as much concerned in the matter as was any one of the other parties. She gave a valuable consideration for the benefits which were to accrue to her, and her rights in the premises were just as much entitled to protection as were the rights of either of the other parties to the transaction. Besides, whatever may have been the secret intention of Warren Miles with reference to the commission by him of any fraud upon his par-

ents, the findings by the trial court are to the effect that no fraud was actually committed, for the reason that by the strict letter of the agreement, and within a reasonable time after the contract had been entered into Warren Miles fully performed the acts which he was obligated to perform.

[3] The appellants advance the point that the action was not maintainable for the reason that the contract among the parties was not made expressly for the benefit of plaintiff. It is clear, however, that the facts as found by the trial court do not sustain appellants' contention. The evidence shows that Warren Miles negotiated with his parents concerning the subject matter of the contract solely on the basis that plaintiff should benefit by the expatriation of Warren Miles; and that plaintiff consented to the banishment of Warren Miles solely on the condition that the indebtedness which he owed to plaintiff, and which was evidenced by a promissory note which plaintiff surrendered to Warren Miles, should be satisfied and discharged by and through the funds which the defendants were obligated to make available to plaintiff. There were no other visible "benefits" in the transaction, unless the fact that Warren Miles was to go from California to the Nebraska ranch and there to "associate himself with an agricultural enterprise," may be so considered; and, if so, that "benefit" was realized and accomplished. In order that a person may be entitled to enforce a benefit derivable from an agreement entered into by other persons, it is not necessary that such contract be made exclusively for the benefit of the person seeking to establish such right. It is sufficient if among the benefits arising from the performance of the agreement there exists the right sought to be established. (*Riverside Land Co.* v. *Jarvis,* 174 Cal. 316 [163 Pac. 54].)

[4] That defendant Sue Miles was not in any way a party to the contract upon which the action was based is also suggested by appellants as a reason why the judgment should be reversed. Among other things, Sue Miles testified that she had "put up the money"; that she did the greater part of the talking; and that her "whole heart was set" on getting her "boy" away. Considering other evidence introduced at the trial of the action, it is clear that all the acts performed by Joseph Harvey Miles and defendant Kelby in the matter were at the instigation and request of

defendant Sue Miles; and the finding by the court that she entered into the agreement to which reference has just been had is amply sustained by the evidence.

[5] Appellants present the further point that defendant Kelby was not a party to the contract, but that he was acting only as an attorney and agent for the disbursement of the moneys in question, and consequently that he incurred no liability.

From the findings heretofore herein set forth it appears that by agreement of all the parties to the contract defendant Kelby was selected as a trustee of the funds which were to be placed in his keeping for the purpose of paying them to plaintiff upon the happening of the contingencies specified in the memorandum which defendant Kelby executed and delivered to plaintiff. It must therefore be presumed that it was partly because of the representations made to plaintiff by defendant Kelby as to his own trustworthiness, and that he was acting for plaintiff, that plaintiff was induced to agree to the arrangement by which defendant Kelby was to handle the monetary part of the transaction. She had placed absolute confidence in him—he was her agent, as well as the agent of the other parties. The conditions of the contract on the part of plaintiff having been performed by her, in that she surrendered the promissory note which evidenced the indebtedness of Warren Miles to her, Mr. Kelby was in no position to return to defendant Sue Miles the money which theretofore she had entrusted to him to be paid to plaintiff in accordance with the terms of the agreement among the parties. It was a violation of the trust reposed in defendant Kelby for him not to retain in his possession the funds which were to become the property of plaintiff upon the performance of the conditions of the contract which were to be performed by plaintiff and Warren Miles. Having in effect thus breached the contract, his liability therefor follows as a matter of course.

[6] Appellants claim that because the entire sum of $2,500 mentioned in the agreement was not to be paid directly to plaintiff, but that certain sums of money included in the total consideration of $2,500 were to be paid on account of debts owing by her, the recovery, if any, should be limited to the amount of money which would be paid to plaintiff personally. It can be of no consequence to the

defendants to what use the money was to be put. Upon the compliance with the conditions of the contract by plaintiff and Warren Miles, the money was to become the property of plaintiff, subject, in part, to be paid out in accordance with her directions. Manifestly the intention of the parties was that $2,500 was to be paid for the use and benefit of plaintiff. The defendants breached and repudiated the agreement; and it would be inequitable by reason of defendants' wrong to permit them to make a profit by paying to plaintiff only the net amount which she would have received had the original arrangement been carried out by all the parties. If by plaintiff's direction, or with her consent, a part of the fund was to be used in discharging certain of her obligations, that fact cannot militate against the direct obligation of the defendants to pay to plaintiff the amount of money which was agreed to be paid to her or for her benefit.

[7] It is further urged by appellants that the judgment on the second count of the complaint for money had and received cannot be sustained. But conceding (without deciding) the point to be well taken, it could not help appellants' position. The first cause of action is unquestioned as to its sufficiency. It having been proven on the trial of the action and sustained by the judgment of this court, whether the second count, affecting the same transaction, is maintainable becomes immaterial.

[8] The appellants finally contend that the trial court erred to the prejudice of the defendants in refusing to grant their motion for a new trial. The motion was based on the theory that if a new trial were granted "newly discovered evidence" would result in a judgment for the defendants. The substance of such "newly discovered evidence" is contained within certain affidavits which were filed by the defendants in support of their motion for a new trial. A counter-affidavit by plaintiff contradicted practically each material fact set forth in the affidavits presented by the defendants. In such circumstances the granting or the denying of the motion for a new trial rested within the sound discretion of the trial court.

In the case of *People* v. *Oxnam,* 170 Cal. 211, 215 [149 Pac. 165, 167], it is said: "It is the established rule in this state that a new trial should be granted on this ground only

where the newly discovered evidence is such as to render a different result probable, and it has been said that the question as to the effect upon the case of newly discovered evidence is from its nature peculiarly one that is addressed to the discretion of the trial court. 'Unless the appellate court can plainly see that this discretion has been abused, that the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial in view of the newly discovered evidence, the. order of the trial court refusing a new trial will not be disturbed.' (*People* v. *Sing Yow,* 145 Cal. 1 [78 Pac. 235].) ''

To the same effect, see *Fresno Estate Co.* v. *Fiske,* 172 Cal. 583 [157 Pac. 1127] ; *People* v. *Taminago,* 35 Cal. App. 238 [169 Pac. 696] ; *Spottiswood* v. *Weir,* 80 Cal. 448 [22 Pac. 289].

So far as this court is able to determine, the trial court did not abuse its discretion in refusing to grant the motion for a new trial.

No prejudicial error appearing in the record, it is ordered that the judgment be and the same is affirmed.

Conrey, P. J., and Finlayson, J., *pro tem.,* concurred.