[Civ. No. 18514. Second Dist., Div. Two. Oct. 23, 1951.]

DR. MANN E. BORSOOK et al., Respondents, v. CONTI-
NENTAL CASUALTY COMPANY (a Corporation),
Appellant.

Anderson, McPharlin & Conners for Appellant.

J. E. Simpson and James C. R. McCall for Respondents.

MOORE, P. J.—This is an appeal from an interlocutory judgment reforming a completion bond, awarding plaintiffs damages and ordering appellant to discharge all liens of record against the property of plaintiffs.

Under date of October 12, 1948, respondent Dr. Borsook as owner, and one Hasekian as builder, executed an agreement whereby the latter was to construct a medical office building for the doctor at a cost of $15,000. Under such contract Hasekian was to furnish a satisfactory completion bond. Accordingly, on the same date, he submitted an application for such bond to appellant through one Jones, an insurance broker. The application recited that the bond was to be given to Dr. Borsook as provided by his agreement with Hasekian and contained full and complete provisions for indemnification of the surety by Hasekian. The bond as subsequently issued, however, referred to a contract between the parties dated October 7, 1948. A bonding company representative, Mr. Jonas, testified that Jones submitted to him a copy of an incomplete and unexecuted draft of a contract bearing date of October 7 and that it was under this contract appellant purported to guarantee Hasekian's performance. The document dated October 7, 1948, appears to have been a mere illustrative form. The agreement actually executed on October

12 provided for payment to the contractor of 50 per cent when the contract was executed, 30 per cent when notice of completion was filed and the remainder within 30 days thereafter. Jonas testified that it was represented to him that payments would be in the normal manner of five equal installments.

Hasekian began construction under the building contract but breached it in many particulars and failed to complete the building. During the period of construction certain extras to cost $1,730.90 were agreed upon between owner and builder, raising the total construction cost to $16,730.90. Thereafter, numerous mechanics' liens were filed against the property whereupon Dr. Borsook instituted this action against Hasekian and the lien claimants to settle all disputes in one action. Pursuant to an arbitration provision in the contract, a Board of Arbiters awarded $3,962.06 to Borsook as damages for the contractor's breach. Such award was later confirmed by the court.

The Continental Casualty Company alone appeals from the judgment. ■ The first ground urged for reversal is that the trial court erred in granting reformation of the bond changing the date of the contract referred to from October 7 to October 12, 1948. It is argued that there was no mutual mistake, as required under section 3399 of the Civil Code, since appellant had no knowledge of the contract of October 12 and thus did not know or suspect the presence of any mistake, citing *Menning* v. *Sourisseau,* 128 Cal.App. 635 [18 P.2d 77], and *Goodfellow* v. *Barritt,* 130 Cal.App. 548 [20 P.2d 740]. These decisions set forth the general, familiar rule that for reformation to be granted there must be a mutual mistake or a mistake of the party seeking reformation which was known or suspected by the other.

However, the court below found specifically that the erroneous recital in the bond resulted "from the mutual mistake of the parties and from the fact that the bonding company knew or suspected, or should have known or suspected, that the reference to a contract dated October 7, 1948, did not truly express the intention of the parties. . . ." This finding is supported by the evidence. Dr. Borsook testified that he intended the bond to secure performance of the October 12 agreement as there was no other contract executed between the parties. Hasekian testified to the same effect, and that his application to the surety company so stated. Mr. Jonas testified, though, that he thought the contract was dated Oc-

tober 7 despite the fact that the application was the basis for the bond later issued.

Obviously, it was the intention of all parties that Hasekian's promised performance be guaranteed by a binding contract executed between the owner and contractor and not by an unexecuted document which did not even mention the cost of construction of the building or the method and percentage of installment payments. This mistake is similar to that found to exist in *Bank of America* v. *Granger,* 115 Cal.App. 210 [1 P.2d 479], where reformation was permitted when the parties had mistakenly executed guaranties in favor of an extinct corporation. Reformation was also ordered in *Genuser* v. *Ocean Acc. & Guar. Co.,* 57 Cal.App.2d 979 [135 P.2d 670], of an insurance policy so that it would correctly "describe a car which plaintiff owned, not one which he did not own."

▆▆ Appellant's second contention is that it was discharged from liability on its bond by reason of respondent's premature payments to the contractor. Such a material alteration of the principal's obligation by the creditor generally operates to discharge the surety. (*Pacific Coast Eng. Co.* v. *Detroit F. & S. Co.,* 214 Cal. 384, 395 [5 P.2d 888].) But this is not the case where the surety has consented to such alteration. (*Ganahl* v. *Weir,* 130 Cal. 237, 240 [62 P. 512]; *American Trust Co.* v. *Jones,* 130 Cal.App. 651, 655 [20 P.2d 346].)

▆ Herein the trial court found that appellant "consented and agreed that the said contract could be modified, or altered, deviated from, added to, or omissions made therein. . . ." Evidentiary support for this finding is found in the contract between owner and builder wherein such modifications and alterations are provided for. ▆ In determining the extent of the surety's undertaking reference must be had to the performance bond itself but read and construed in the light of the provisions of the building contract under which performance is guaranteed. (*Ryan* v. *Shannahan,* 209 Cal. 98, 101-2 [285 P. 1045].) ▆ In any case, since appellant has not attacked such finding, it must be considered as supported by the record. (*Miles* v. *Miles,* 77 Cal.App. 219, 227 [246 P. 143].)

Appellant also asserts that the court below exceeded its jurisdiction in awarding judgments in favor of the four labor and material suppliers since appellant was never served with their cross-complaints. ▆ In the absence of a showing that appellant was not served with the cross-complaints, it will be presumed on appeal that the court had jurisdiction to render judgments. (2 Cal.Jur., Appeal and Error, p. 858

et seq.) Moreover, the record does reveal that counsel for appellant entered into a stipulation that judgment could be rendered in favor of Dalton Electric Company and M & B Floor Coverings and against Hasekian and also against appellant if it should be found liable on its bond. The record also discloses that Underwood's counsel in open court stated that the cross-complaint of Robbins and Underwood was served on appellant.

With reference to the fourth claimant, White Electric Company, appellant's contention is technically correct since appellant is not even named cross-defendant in the cross-complaint of White Company. However, the latter corporation did file a mechanic's lien against the Borsook property. Since appellant is required by the judgment to "pay all unpaid bills for labor and materials . . . furnished by all persons through defendant Hasekian in or for the performance of the building contract dated October 12, 1948," appellant can suffer no prejudice by reason of the judgment's provision for recovery by White Electric Company for the amount of its lien.

Judgment affirmed.

McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1951.