[Civ. No. 16390. Third Dist. Oct. 17, 1979.]

CITY OF SACRAMENTO, Plaintiff and Respondent, v.
TRANS PACIFIC INDUSTRIES, INC., et al.,
Defendants and Appellants.

392

COUNSEL

Downey, Brand, Seymour & Rohwer and D. Steven Blake for Defendants and Appellants.

James P. Jackson, City Attorney, and Leliand J. Savage, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Defendants Trans Pacific Industries, Inc. (TPI) and Fireman's Fund Insurance Company (Fireman's) appeal from the judgment in favor of plaintiff City of Sacramento (City). The judgment was entered after a court trial of a contract action arising out of TPI's failure to perform its obligations under a subdivision agreement with City. On appeal both defendants contend that (1) there is no evidence City suffered damages as a result of TPI's breach; and (2) even if City was damaged, it failed to mitigate damages. Fireman's additionally contends that (1) it was exonerated under its surety bond guaranteeing TPI's performance; (2) the agreement whereby City promised to reimburse cross-defendant Ron Watkins Properties, Inc. (Watkins), out of any recovery in this lawsuit for his expenses incurred in performing certain of TPI's defaulted contractual obligations constitutes an unlawful attempt to assign a public subdivision bond;[1] and (3) with reference to that portion of the judgment in City's favor equal to the cost of engineering services supplied TPI by City, Fireman's was neither party to nor surety for TPI with respect to the contract by which TPI promised to pay City for such services.

FACTS

On December 14, 1972, City and TPI entered into a written subdivision agreement in which City agreed to approve TPI's final subdivision map for the development of an approximately 33-acre parcel of land (College Town Unit No. 2) subject to certain conditions. Under the agreement TPI agreed "to construct all public improvements, including

---

[1]Appeal from the judgment in favor of cross-defendant Watkins on TPI's cross-complaint for indemnity has been abandoned.

streets, sidewalks, curbs and gutters, storm drains, street lighting, sewer and water lines and other related works connected with the College Town Unit 2 Subdivision as determined by the City Engineer based upon the final map. . .and the Standard Specifications adopted by the City of Sacramento for public works."

The written agreement further specified that all of the improvements were to be completed within 12 months from December 14, 1972, the date of the contract's execution, unless the city engineer granted an extension of time. If delay was not caused by TPI, the agreement provided, "the time for the completion [of public improvements] may be extended by City for such period of time as City may deem reasonable. Any extension of time hereunder shall not operate to release the surety on the bonds filed pursuant to this Agreement. In this connection the surety waives the provisions of Section 2819 of the Civil Code of the State of California."[2] In the event TPI failed to complete the improvements within the allotted time, City had the right under the contract to complete any unfinished work and recover its costs in full from TPI or its surety.

By the terms of the subdivision agreement, TPI was also required to obtain and file with City a performance bond in the amount of $107,634.50. A bond in this amount issued by defendant Fireman's Fund on November 30, 1972, provides inter alia: "THE CONDITION OF THIS OBLIGATION IS SUCH that if said Principal shall fail to improve and complete in a good and workmanlike manner, the construction of public improvements, including streets, sidewalks, curbs and gutters, storm drains, street lighting, sewer and water lines and other related works connected with the College Town Unit # 2 subdivision in the City of Sacramento *as required under* the provisions of law of the City of Sacramento and the State of California, and *that agreement between the City of Sacramento and the Principal, dated November 30, 1972,* then the Surety shall pay the City of Sacramento for the same in an amount not exceeding the amount set forth above and shall also pay, in case suit is brought upon this bond, such reasonable attorney's fees as shall be fixed by the Court." (Italics (*added.*)

---

[2] Civil Code section 2819 provides: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

The bond referred to a November 30, 1972, agreement between TPI and City when in fact the evidence showed no agreement between those parties until December 14, 1972. However, TPI and Fireman's have admitted that the TPI-City agreement contemplated by the bond was in fact the December 14, 1972, TPI-City subdivision agreement.

The subdivision map filed by TPI and approved by City divided College Town Unit No. 2 into eight parcels. On July 31, 1973, City wrote to TPI, calling TPI's attention to the fact that the December 14, 1973, deadline was approaching and only parts of the promised improvements had been completed. City directed TPI to contact City's engineering department by August 15, 1973, and make arrangements for the preparation of plans, specifications and estimates for completing the balance of the work; otherwise, City warned, it would prepare to pursue its option of performing the work itself and seeking reimbursement from Fireman's on TPI's performance bond.

Accordingly on August 20, 1973, TPI wrote a letter authorizing City to proceed with plans and specifications for the public improvements on the remaining land, i.e., on parcels 2, 3, 6, 7, and 8. TPI agreed to pay City an engineering fee of 8-½ percent of the final construction costs for the improvements. In fact, TPI was merely trying to buy time; with the exception of parcel 2, TPI had no intention itself of putting the improvements in. Instead it hoped to sell the land and let the buyer install them. TPI was suffering severe cash flow problems at this time.

Watkins signed a deposit receipt for the purchase of parcels 3, 6, 7 and 8 in October 1973. Escrow closed on Watkins' purchase in mid-March 1974. Evidence at trial conflicted sharply as to whether Watkins had made specific inquiry of TPI as to the status of the public improvements for the respective parcels before the purchase was completed. Stroumpos, an employee of Watkins, testified he inquired about the availability of utilities (water, sewer, and electricity) to the property lines of the respective parcels and was told utilities were available, meaning that the water main and the streetlights had been installed as required by the City-TPI subdivision agreement. Parker, executive officer for TPI, claimed that no such inquiry had been made or, if it was made, he did not say utilities were available *to the property line*. Parker also testified it was customary in the real estate trade for a buyer in Watkins' position to buy the unimproved land with the expectation of

installing the necessary public improvements at his own expense, absent an explicit agreement to the contrary. In any event, Watkins testified and the trial court found, that he had bought the property expecting himself to install the visibly absent improvements (i.e., curbs, sidewalks, gutters), but believing the water and street lighting improvements were complete.

Sometime after his purchase of the property in the spring of 1974, Watkins learned that some $38,759 worth of water and electrical improvements would have to be installed before he could proceed with his plans to develop the parcels.[3] Although he contacted TPI's president to complain that he had not received what he had thought he was buying, Watkins made no demand on TPI or attempt to rescind the sale, because he was aware that TPI was in dire financial straits and would be unable to satisfy any judgment he might obtain against them.[4] He was corroborated in these conclusions by the president of TPI who testified that TPI had sustained large losses in 1974, had spent the net proceeds from the Watkin's sale upon receipt and would not have rescinded the agreement even if Watkins had sought rescission.

Meanwhile, City sent TPI the requested engineering plans on March 20, 1974. Sometime thereafter, Watkins was introduced to City personnel as the new owner of parcels 3, 6, 7 and 8, and he began negotiating with City for construction of the improvements so that he could develop the parcels. Watkins was in financial difficulty, but he had a prospective tenant (a restaurant) for parcel 6 as soon as he could develop it. In early 1975, City told Watkins that although City was informed by counsel that it could not deny him a building permit for the restaurant, he would have no water available since City did not have funds with which to install the missing improvements. Watkins was required to spend $50,000 annually just to hold onto the bare land. The instant

---

[3]The amended complaint sought $45,159.51. This sum represented Watkins' cost of installing water and electrical improvements, the 8-½ percent City engineering fee for those items, and a certain stretch of sidewalk along parcels 7 and 8. The judgment for $42,053.51 included recovery for all but the sidewalks, which had not been included on the engineering plans City supplied to TPI.

[4]Indeed, Watkins had been an officer of TPI until leaving the corporation in 1970. While an officer he had signed a guarantee for certain bank loans made to TPI. In the fall of 1973 the bank made demand on Watkins for payment, pursuant to his $2.5 million guarantee. At the time of this trial, Watkins was concurrently being sued by the bank for some $2.25 million arising out of his guarantee of TPI's financial transactions.

lawsuit which City had filed in October 1974, against TPI and its surety would, it was then estimated, take two years to prosecute to completion. Faced with this situation, Watkins entered into an agreement with City in July 1975, whereby he agreed to construct all the improvements on parcels 3, 6, 7, and 8 in exchange for City's promise to reimburse him from any judgment it was successful in recovering against TPI and Fireman's.

The trial court entered judgment in favor of City against TPI and Fireman's for $42,053.51 plus interest, costs in the amount of $209.69, and, against Fireman's only for $2,500 in attorney's fees. Defendants' motion for new trial was denied, and notice of appeal was filed.

I

Defendants contend that City suffered no out-of-pocket damages from TPI's breach, because Watkins did the work at no cost to City unless City were later to recover judgment in this lawsuit. Since City was not damaged by the breach, defendants argue, the award of judgment in its favor is "unreasonable and grossly oppressive under the circumstances."

When City brought suit against TPI and Fireman's in October 1974, City was confronted with a partially improved, partially occupied tract of land which it had a contractual right to have fully improved in accordance with the subdivision agreement. City made demand on TPI for performance but to no avail. At that moment, City's damages were measurable by the value of its unfulfilled right, i.e., the cost of bringing the balance of College Town Unit No. 2 into compliance with the contract by installing the bargained-for improvements. *(County of Los Angeles v. Margulis* (1935) 6 Cal.App.2d 57, 59-60 [44 P.2d 608].)

When City entered into the agreement with Watkins the following July, City's damages did not magically disappear. Watkins did not promise to construct the improvements as a gift; he extracted consideration from the City in the form of City's conditional promise to repay him if it prevailed in its action against defendants.

*County of Yuba* v. *Central Valley Nat. Bank, Inc.* (1971) 20 Cal.App.3d 109 [97 Cal.Rptr. 369], relied on by defendants, is distin-

guishable. There a builder secured county approval of his subdivision map for the intended development of a parcel of unimproved agricultural land. He furnished a performance bond. Construction never commenced because the builder abandoned his plans to develop the land when his intended market of buyers evaporated due to lay-offs at a nearby military base. When county sued the surety due to the builder's failure to install the public improvements on the as-yet undeveloped land, the trial court found on the basis of the language in the bond and certain parol evidence, that all parties to the agreement had intended the surety's obligation to be conditional on the builder's initiation of construction on the parcel. Since the land was still untouched, the condition had failed, and the surety's obligation never matured.

The *County of Yuba* case is of no aid to defendants since there is no showing herein of any unfulfilled condition precedent to the surety's obligation to pay. Moreover, there is an additional basis of distinction. Although the county was suing to collect on a bond to guarantee performance of the builder's obligation to construct and dedicate certain public improvements if in fact he built at all on the land, there is no indication that the county had any need, or any intention, to use any money recovered in the lawsuit to install the improvements. Since the land was still uninhabited farmland, there was no need thereon for roads, easements, or rights of way. (See, 20 Cal.App.3d at p. 112.) In effect, a forfeiture was involved. (*Id.,* at p. 111.) Here, in contrast, development had commenced on some of the parcels, and was planned on the rest. A palpable need existed for the needed improvements to be constructed on Watkins' land. Judgment in City's favor did not constitute a forfeiture, but rather paid for Watkins' performance of TPI's unfulfilled obligations. The element of damages has thus been made out.

## II

Equally without merit is defendants' claim that City neglected the opportunity to mitigate its damages by forcing Watkins to construct the improvements at no cost to City as a condition of issuing him a building permit. *Keizer* v. *Adams* (1970) 2 Cal.3d 976 [88 Cal.Rptr. 183, 471 P.2d 983], does not support defendants' contention that the City could lawfully have attached such a condition to issuance of a

building permit. *Keizer* merely holds that although an innocent purchaser from a seller who violates the Subdivision Map Act may require local authorities to consider his application for a building permit "without regard to" the Subdivision Map Act, the local agency *may equitably be permitted* to require the purchaser to comply with reasonable conditions imposed in the public interest, including the construction of improvements. (2 Cal.3d at p. 981.) We do not find therein a power by which City could deny Watkins'·building permit because of his vendor's breach of contract.

Indeed, given the evidence of the rapid rise in construction costs during the course of this litigation, City's election to have Watkins install the improvements in 1975 rather than wait until the conclusion of this litigation to determine the costs of completing the work undoubtedly *did* mitigate damages.

## III

Fireman's argues it was exonerated on the surety bond because City materially altered TPI's obligations under the subdivision agreement without Fireman's consent. (Civ. Code, § 2819.) In the alternative, Fireman's urges it was not indemnified by TPI within the meaning of Civil Code section 2819 which provides that "[a] surety is exonerated, *except so far as he may be indemnified by the principal,* if by any act of the creditor...the original obligation...is altered...." (Italics added.)

Fireman's raises the indemnification argument for the first time on appeal and in a complete vacuum. It was neither pleaded as an affirmative defense nor identified as an issue in the pretrial statement. Furthermore, no evidence relating to the issue of TPI's indemnification of Fireman's was introduced at the trial. Since due execution and authenticity of Fireman's surety bond *were* established by the pleadings, a claim of exoneration is a matter to be pleaded and proved as an affirmative defense. Fireman's failure to introduce any evidence regarding indemnification precludes consideration of its argument here. In any event the question of indemnification vel non is academic since we reject on the merits Fireman's claim of material alteration of TPI's obligations under the subdivision agreement.

■ As to the first basis on which Fireman's alleges a material alteration of TPI's obligation, the record shows that the projected location of a water main was changed from beneath the street to beneath the sidewalk. Apparently an additional fire hydrant was also installed as a result of the relocation of the water main. The reason for the relocation was that by the time Watkins came into the picture, TPI had already put in the street without first installing the planned water main beneath it. At that point then it was more economical to install the main in bare ground, than to dig through pavement and repave. As a consequence of this relocation, an additional 170 feet of water main had to be laid. The cost of extending the water main and adding the hydrant was $2,040.

To the extent that these alterations were necessary because TPI had not performed *its* work in a workmanlike manner (i.e., by laying the road without first putting in the water main beneath it as required by the final, City-approved plans), any additional costs incurred as a result were precisely what Fireman's, as surety for TPI, had obligated itself to pay when it promised to pay City "if said Principal [should] fail to improve and complete in a good and workmanlike manner, the construction of [the] public improvements."

As an additional basis for its exoneration claim, Fireman's cites the extension of the 12-month period for completion of the work by agreements between City and TPI without notice to, or consent by, Fireman's. As we have noted, the subdivision agreement provided that the surety waived the provisions of Civil Code section 2819 with respect to claims of exoneration by virtue of such extensions of time. Fireman's attempted at trial and attempts again on appeal to urge it should not be bound by the waiver provision because the date referenced in the bond predates the date of the subdivision agreement by two weeks.[5] However, this argument is foreclosed by Fireman's pretrial admission that the City-TPI contract was indeed "the agreement" specified in the bond by which Fireman's agreed to be bound.

Moreover, the City-TPI agreement provided for extensions of time such as occurred, and the surety's obligation is measured by the terms

---

[5]By this argument Fireman's attempts to have its cake and eat it too, inasmuch as it argues it *was* bound by the subdivision contract to the extent of those terms helpful to it (e.g., that builder shall complete improvements within 12 months' time), but it was *not* bound by the same agreement to the extent of the surety's limited waiver of Civil Code section 2819.

of that agreement considered in conjunction with the bond. (*Bloom v. Bender* (1957) 48 Cal.2d 793, 803 [313 P.2d 568]; *Borsook v. Continental Cas. Co.* (1951) 107 Cal.App.2d 21, 24 [236 P.2d 383].)

### IV

■ Fireman's argument that the City-Watkins reimbursement contract constituted an unlawful attempt to assign a public subdivision bond is without merit. City did not assign its chose-in-action against TPI or Fireman's; it merely promised to pay Watkins for his work *if* it was successful in the lawsuit. (See *Berman v. Aetna Cas. & Surety Co.* (1974) 40 Cal.App.3d 908, 911 [115 Cal.Rptr. 566].) *Morro Palisades Co. v. Hartford Accident & Indemnity Co.* (1959) 52 Cal.2d 397, 401-402 [340 P.2d 628], does not require a contrary conclusion for City did not attempt herein to alienate its right to bring the action.

### V

■ Finally, Fireman's argues that City's judgment against it for engineering fees in the amount of $3,294.51 must be reversed because Fireman's was neither party to, nor surety for, the City-TPI engineering services agreement. City's cause of action for engineering fees was pleaded only against TPI.

We do not, however, regard the posture of the pleadings as dispositive of the issue. Rather, we examine whether Fireman's, although not a party to the engineering services agreement, may nonetheless be held liable therefor under the terms of the bond and the City-TPI agreement by which Fireman's, as surety, agreed to be bound.

Under the engineering services agreement TPI agreed to pay City the sum of 8-½ percent of the final construction costs of those public improvements engineered by City. The agreement was entered into eight months after City and TPI had entered into the subdivision agreement.

The trial court apparently based its finding of Fireman's liability for the engineering services on Fireman's status as surety for TPI's obligations under the subdivision agreement. Although the subdivision

agreement makes no express reference to the subject of engineering costs, the written memorandum does contain the following provision: "In the event that Subdivider fails to complete the public improvements...the City may complete said work, or any portion thereof, and shall be entitled to recover the *full cost and expenses* thereof from Subdivider or his surety as hereinafter provided. The City may require Subdivider or his surety to pay the City, in advance, sufficient money to recover City's *cost in completing construction* of said public improvements." (Italics added.) The subdivision agreement also incorporates by reference the provisions of chapter 40 of the Sacramento City Code, which provides inter alia: "Sec. 40.24. BOND TO INSURE COMPLETION OF WORK.

"To assure that the work specified by this Chapter and by the City Engineer will be completed, a corporate surety bond must be furnished guaranteeing the faithful performance of the work in a sum equal to the cost as approved by the City Engineer...." And finally, the bond instrument itself provided that Fireman's as surety would pay an amount up to $107,634.50, "if [TPI] shall fail to construct [the] public improvements [herein at issue]." The condition precedent to Fireman's obligation to pay was: "...if said Principal shall fail to improve and complete in a good and workmanlike manner, the construction of public improvements [in the College Town Unit No. 2 subdivision, as required by City-TPI subdivision agreement]..., then the Surety shall pay the City of Sacramento for the same...."

Plaintiff urges that the engineering services herein at issue were a necessary part of the process of installing the public improvements and that City's engineering fees were properly awarded to it as part of "the full cost and expenses" of completion of the work which TPI was obligated to perform, and which Fireman's had guaranteed. We agree.

 "It is a general principle of suretyship law that while a surety cannot be held beyond the express terms of his contract, the contract is to be interpreted by the same rules used in construing other types of contracts, with a view towards effectuating the purposes for which the contract was designed." (*Bloom* v. *Bender, supra,* 48 Cal.2d at p. 803.) "In determining the extent of the surety's undertaking reference must be had to the performance bond itself but read and construed in the light of the provisions of the building contract under which performance

is guaranteed." (*Borsook* v. *Continental Cas. Co., supra,* 107 Cal. App.2d at p. 24.) "'[T]he extent of the surety's liability must be gathered from the language used, when read in light of the circumstances attending the transaction.'" *(Verdugo Highlands, Inc.* v. *Security Ins. Co.* (1966) 240 Cal.App.2d 527, 531 [49 Cal.Rptr. 736]; *Ryan* v. *Shannahan* (1930) 209 Cal. 98, 101 [285 P. 1045].)

 Fireman's surety bond was designed for the purpose of making City whole in the event TPI breached its obligation to install the public improvements for the lots in College Town Unit No. 2. Properly engineered plans and specifications are a necessary part of the process of properly constructing "streets, sidewalks, curbs and gutters, storm drains, street lighting, [and] sewer and water lines" in a subdivision. The builder's incurring of expenses for engineering services was within the foreseeable scope of the City-TPI subdivision agreement by which Fireman's agreed to be bound as surety for TPI. (*Verdugo Highlands, Inc.* v. *Security Ins. Co., supra,* 240 Cal.App.2d at p. 532.) The trial court did not err when it held Fireman's liable for the engineering fees in Fireman's capacity as TPI's surety.

With respect to City's failure expressly to plead a cause of action against Fireman's for the engineering fees, a similar situation confronted the appellate court in *Borsook* v. *Continental Cas. Co., supra,* 107 Cal.App.2d at page 25. There the owner sued the builder and the subcontractors for breach arising out of the builders's failure to complete owner's building according to their contractual agreement. The builder's surety was also a defendant. One of the subcontractors cross-complained against the builder but did not name the surety as a cross-defendant. The judgment required the surety to pay all unpaid bills for labor and materials furnished by all persons including the nonsuing subcontractor. The Court of Appeal affirmed, noting that the surety "[could] suffer no prejudice by reason of the judgment's provision for recovery" by the subcontractor for the amount of his mechanic's lien filed against owner's interest in the property.

Similarly, there was no prejudice here. The pleadings served adequately to put Fireman's on notice that City sought to be made whole for all damages suffered as a result of TPI's failure to perform its contractual obligations under the subdivision agreement.

## VI

Attorney's fees were awarded to City against Fireman's in the trial court on the basis of Fireman's contractual obligation to pay, "in case suit is brought upon this bond, such reasonable attorney's fees as shall be fixed by the Court." City now seeks attorney's fees on appeal and Fireman's does not contest City's right to such fees. Accordingly City shall recover from Fireman's as and for attorney's fees on appeal the sum of $1,000.

The judgment is affirmed.

Evans, J., and Reynoso, J., concurred.