[Civ. No. 25983. Second Dist., Div. Three. Jan. 16, 1963.]

GREGORIO T. LOZANO et al., Plaintiffs and Appellants, v. HAROLD AARON JOLLENSTEN, Defendant and Respondent.

Jack H. Faucett and Richard L. Crail for Plaintiffs and Appellants.

Kahn, Stern & Blaney and Doyle O. Blaney for Defendant and Respondent.

FORD, J.—This action arises out of a transaction between the plaintiffs, the owners of a trailer park, and the defendant contractor relating to electrical work to be done on the plaintiffs' property. The work was not completed. The plaintiffs sued to recover a payment of $500 made to the defendant. The defendant filed a cross-complaint in which he sought to recover damages for breach of contract. The plaintiffs have appealed from a judgment in favor of the defendant and cross-complainant.

The findings of fact of the trial court were in part as follows: 1. On July 16, 1959, the parties entered into a written contract. 2. The contract provided in part as follows:

"1. . . . The Contractor shall furnish all of the materials and perform all of the work shown on the plans for electrical work necessary to re-wire the . . . trailer park . . . . 2. The work . . . shall be completed on or before the 20th day of August, 1959. . . .

8. The total contract price shall be $6,491.96. Contractor hereby acknowledges receipt of the sum of $500.00 to apply on said contract price. . . .

9. . . . The parties shall forthwith enter into an escrow agreement at [a named company engaged in rendering the contemplated service] . . . wherein and whereby this contract shall be presented and based thereon the said escrow will set up its usual method of receipt of funds from the owner, the payment to the Contractor for his work of performance hereunder in the usual progress payments, including further the general terms contained in such an escrow agreement. . . .

10. In the event suit is brought by either party . . . the prevailing party . . . shall be entitled to recover reasonable attorney's fees. . . ."

3. "That on the 5th day of August, 1959, cross-defendants waived section 9 of said contract pertaining to an escrow agreement by authorizing cross-complainant to furnish a surety bond in lieu thereof, and that cross-complainant thereafter obtain [sic] said surety bond, which was applied for and issued within a reasonable time; that the parties thereby entered into an oral agreement modifying the written contract and that said oral agreement was executed, resulting in a legal modification of said paragraph 9." 4. The cross-complainant was ready, able and willing to perform the contract but the cross-defendants refused to permit him to do so. 5. The cross-complainant was thereby caused to suffer a loss of profits in the sum of $320.96. 6. "That the cross-complainant . . . delivered to the premises of the cross-defendants goods, chattels and equipment to be used in the performance of said contract costing $5,344.47; that part of said property was returned to the cross-complainant and that cross-complainant had previously received the sum of $500.00 from the cross-defendants as an advance payment of said property; that cross-complainant returned part of the property to his suppliers and received the sum of $1,061.42 and that cross-complainant sustained a net loss of $3,783.05."

Judgment was rendered against the plaintiffs and cross-defendants for the sum of $4,102.25, together with interest thereon from August 30, 1959, in the amount of $480.69 and attorney's fees in the amount of $500. It was further adjudged that "the plaintiffs are entitled to the ownership and title of that certain metering equipment presently in the possession of cross-complainant . . . provided however that

plaintiffs shall notify cross-complainant in writing as to their desire to acquire said metering equipment within five days after entry of judgment herein.''

It is undisputed that the escrow contemplated under the provisions of section 9 of the written contract was never established. The testimony of both Mr. Lozano and Mr. Jollensten was in substance that the company designated to render such service declined to undertake the task. Mr. Jollensten testified that his memory was that such declination occurred at the end of July 1959. Thereafter, on August 5 the parties discussed the matter of having Mr. Jollensten furnish a bond in lieu of the escrow arrangement.[1] The cost thereof was to be borne by Mr. Lozano. Mr. Jollensten made an application for a bond. Materials were delivered to Mr. Lozano's premises but he would not permit Mr. Jollensten to proceed with the work ''until the bond comes.'' Mr. Jollensten further testified as follows: ''Q. Mr. Jollensten, to your knowledge, was a bond obtained? A. Yes. Q. And what date was that, to the best of your recollection? A. August the 25, I think. I don't know for sure.'' No bond, or copy thereof, was introduced in evidence and there was no evidence that a bond was transmitted to Mr. Lozano by anyone. Mr. Lozano testified that Mr. Jollensten never showed him such a bond.

Further testimony of Mr. Jollensten was as follows: ''Q. You told Mr. Lozano it would take approximately ten days to obtain a bond, according to the information that was given you by your insurance broker, isn't that right? A. Under the circumstances, yes, sir. Q. That is what you told him? A. I believe that's right.'' Mr. Jollensten also testified as follows: ''Q. . . . After you were made aware or learned that you had a bond or had been promised a bond, you told us that you at that point turned it over to your attorney, Mr. Kahn, and you didn't have any further direct conversation or negotiations with Mr. Lozano or Mrs. Lozano, is that correct? A. I think that is correct to the best of my knowledge. Q. Now, prior to September 8th, 1959, you were told by Mr. Kahn were you not, that Mr. Lozano had rescinded the contract and elected not to go ahead with it because of the

---

[1]In his cross-complaint the respondent Jollensten alleged as follows: ''That on the 5th day of August, 1959, cross-defendants [Lozano] waived section 9 of said contract pertaining to an escrow agreement by authorizing to [sic] cross-complainant to furnish a surety bond in lieu thereof, and that cross-complainant did thereafter obtain said surety bond.''

failure to get a bond? A. I don't know the dates. Mr. Kahn notified me of that, yes." Section 2 of the written contract provided: "The work to be performed under this contract shall be completed on or before the 20th day of August, 1959."

 It is a reasonable construction of the contract that the availability of the services of the company designated in section 9 was a condition of the legal duty of performance by the parties. (See Corbin on Contracts, § 1339, p. 403.)

 In view of the declination of that company to render such services the parties sought to modify their agreement by an oral agreement for the substitution of a surety bond in lieu of the escrow arrangement. A written contract may be modified by an executed oral agreement. (*MacIsaac & Menke Co.* v. *Cardox Corp.*, 193 Cal.App.2d 661, 670 [14 Cal.Rptr. 523].) However, delivery is essential to the valid execution of such a bond. (*Elsinore Union etc. School Dist.* v. *Kastorff*, 129 Cal.App.2d 60, 65-66 [276 P.2d 112]; see 8 Cal.Jur.2d, Bonds, § 18.)[2] There was no evidence of a delivery of the required bond and the trial court made no express finding of such a delivery. Hence there was no basis for a determination that there was an executed oral agreement which modified the written contract. Consequently, recovery of damages in favor of the appellant Jollensten for breach of contract cannot be sustained.

The judgment is reversed.

Shinn, P. J., and Files, J., concurred.

---

[2]"A contractor's bond, which may be required by the owner of the premises on which a building is being erected or construction work being done . . . must be executed and delivered in accordance with rules governing the execution of bonds generally." (9 Am.Jur., Building and Construction Contracts, § 87.)