[Civ. No. 27845. First Dist., Div. Two. Sept. 20, 1971.]

COUNTY OF YUBA, Plaintiff and Appellant, v.
CENTRAL VALLEY NATIONAL BANK, INC.,
Defendant and Respondent.

## COUNSEL

Alvin Landis, County Counsel, for Plaintiff and Appellant.

FitzSimmons & Hawthorne, Anthony W. Hawthorne and Edward R. Fitz-Simmons for Defendant and Respondent.

## OPINION

**KANE, J.**—The County of Yuba (County) appeals from a judgment following nonjury trial denying recovery upon its complaint filed against Central Valley National Bank, Inc. (Bank), for damages resulting from an alleged breach of an instrument of credit.

In 1961, C.G.O. Enterprises, Inc. (CGO) purchased a 60-acre parcel of unimproved, agricultural land located about six miles southwest of Marysville for the purpose of constructing inexpensive single-family residences for personnel at nearby Beale Air Force Base. A tentative map proposing a subdivision containing 298 lots was thereafter filed, and financial commitments were obtained from Bank.

The proposal was later revised to encompass merely a portion of the 60-acre parcel, containing 50 lots and designated Tract 120. County's Board of Supervisors (Board) approved a final map of Tract 120 and accepted streets and easements offered therein for dedication on August 8, 1962.

Later, CGO initiated plans for construction of a similar development on

the remaining portion containing 52 lots and designated Tract 131. On May 6, 1963, pursuant to Business and Professions Code section 11611,[1] and a County ordinance, CGO and County executed a subdivision agreement in which County agreed to approve the final map of Tract 131 and accept lands, rights of way and easements offered therein for dedication on condition that CGO complete required improvement work upon streets and drainage facilities within 12 months and, pursuant to section 11612, file an acceptable instrument securing the faithful performance of the improvement work in the sum of $35,020. An instrument of credit for said sum was executed and filed by Bank, and County's Board approved a final map of Tract 131 and accepted streets and easements offered therein for dedication.

At about this time, however, a major program at Beale Air Force Base was discontinued, resulting in considerable reduction of base personnel. Consequently, CGO was unable to sell all houses built in Tract 120 and some loans extended by Bank to CGO respecting Tract 120 were foreclosed. Moreover, CGO was unable to obtain financing for Tract 131, and no construction or development of it was ever begun. At the date of trial, February 1969, Tract 131 remained as unimproved agricultural land.

As a result of CGO's failure to commence any improvement work, County demanded payment from Bank of $35,020 pursuant to the instrument of credit executed by Bank on May 6, 1963. County's complaint in the present action followed Bank's refusal to pay.

### Trial Court's Findings and Conclusions

The trial court found in part that all parties contemplated that Tract 131 would be built as a residential subdivision, that construction of streets would serve no useful purpose in the absence of such a subdivision, and that none of the parties intended streets to be constructed except as part of construction of such a subdivision. The court concluded that to require Bank to pay County "when no part of the work of improvements" had begun would be to uphold "an illegal forfeiture," that substantial reduction of the value of the Bank's performance as a result of uncontrollable conditions made the doctrine of " 'frustration of purpose' " or " 'commercial frustration' " applicable, and that an "implied condition" of the instrument of credit was that Bank's liability would arise "only if work were actually commenced on Tract 131."

---

[1]All citations to code sections refer to the Business and Professions Code unless otherwise designated.

## Discussion

■ The issue on appeal is whether Bank remains liable to County in the absence of commencement of any development of Tract 131 or any construction of the improvements therein.[2] For the following reasons we hold that Bank is not liable.

First, the language of the instrument of credit executed by Bank indicates that the parties intended to provide security for full completion of improvements whose construction had already begun. Said document expressly provided a "guarantee" that the sum of $35,020 was on deposit "pledged to meet the performance of completed street improvements" and that "In the event the work is not completed" in accordance with the appropriate County ordinance and within the time limits of the subdivision agreement, then Bank would pay said sum "for the completion of said improvements."

Secondly, to the extent that these provisions do not clarify whether "completion" necessarily presumes initial commencement of construction, the record contains the uncontradicted testimony of CGO president Ortiz that he communicated his belief to County surveyor Mlcoch that the property would merely revert to acreage under the instrument of credit if construction did not begin.[3] Moreover, since the purpose for requiring security for street improvement work is to insure faithful performance of a subdivider's obligation to place streets in a proper condition for use by the public (*Evola* v. *Wendt Construction Co.* (1959) 170 Cal.App.2d 21, 25 [338 P.2d 498], cited with approval in *Weber* v. *Pacific Indemnity Co.* (1962) 204 Cal.App.2d 334, 336 [22 Cal.Rptr. 366]; *City of Buena Park* v. *Boyar* (1960) 186 Cal.App.2d 61, 67 [8 Cal.Rptr. 674]), no purpose is served by construing a security instrument to relate to construction of streets where development of neither the subdivision nor the streets has ever commenced.

---

[2]These factors distinguish the present case from others relied upon by County, including *County of Los Angeles* v. *Margulis* (1935) 6 Cal.App.2d 57, 59 [44 P.2d 608], *Morro Palisades Co.* v. *Hartford Accident & Indemnity Co.* (1959) 52 Cal.2d 397, 401 [340 P.2d 628], and *City of Glendale* v. *Roseglen Constr., Inc.* (1970) 10 Cal.App.3d 777 [89 Cal.Rptr. 219].

[3]Evidence that this interpretation was communicated to Mlcoch prior to execution of the agreement for Tract 131 distinguishes it from testimony considered immaterial in *Stewart Title Co.* v. *Herbert* (1970) 6 Cal.App.3d 957, 964 [85 Cal.Rptr. 654], cited by County. Additionally, County was authorized under section 11640 to revoke approval of the final subdivision map after two years without construction of the improvements.

In this vein it may also be observed that County's interest in the streets and easements offered for dedication was necessarily limited by the conditional nature of its acceptance thereof, which depended for finality upon a subsequent acceptance after satisfactory completion of the street improvements. (*Hoover* v. *County of Kern* (1953) 118 Cal.App.2d 139, 142-143 [257 P.2d 492], cited with approval in *County of Kern* v. *Edgemont Dev. Corp.* (1963) 222 Cal.App.2d 874, 879 [35 Cal.Rptr. 629].) This fact is demonstrated by the subdivision contract executed by County and CGO.

That contract contained County's agreement to approve the final map for Tract 131 and to accept all offers of dedication "in accordance with the conditions hereinafter set forth." Then followed CGO's agreement "to complete the work of improvement" required in the subdivision within 12 months and County's agreement, "Upon satisfactory completion of all improvements" in accordance with local specifications, "to accept for maintenance the work of improvement within the dedicated parcels" and to remedy any defects in construction of the improvements occurring within 12 months "after acceptance thereof."

Thus, the underlying contract itself demonstrates that the sole basis for the relationship between County, CGO and Bank was the development of Tract 131 as a residential subdivision. All of the parties' transactions must therefore be construed with reference to this basic purpose.

The foregoing shows that the instrument of credit was executed by Bank and County with the expectation that the performance it secured related to improvement work which would at least have commenced. The purpose of the instrument was to insure full completion of streets and drainage facilities in order to protect and serve the public. The existence of this purpose, the inclusion in the instrument of credit of references to "completed street improvements" and "completion of said improvements," and the presence of the parties' one mutual interest in development of a residential subdivision, support the trial court's conclusion that at least partial improvement of the land and construction of the streets was contemplated as a prerequisite to the emergence of the obligations owed by Bank and CGO to County. (Civ. Code, §§ 1655, 1656; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 241, p. 270, and cases cited; *Addiego* v. *Hill* (1965) 238 Cal.App.2d 842, 847 [48 Cal.Rptr. 240]; *Lozano* v. *Jollensten* (1963) 211 Cal.App.2d 845, 849 [27 Cal.Rptr. 686].)

In addition to the absence of any breach of contract, the record discloses

no damage whatsoever to County. We agree with the trial court that to permit recovery in the circumstances of this case would be to uphold an "illegal forfeiture."

The judgment is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied October 20, 1971, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1971.