[No. F044023. Fifth Dist. Feb. 17, 2005.]

CITY OF MERCED, Plaintiff and Respondent, v.
AMERICAN MOTORISTS INSURANCE COMPANY, Defendant and
Appellant.

Counsel

Negele & Associates, James R. Negele and Alice M. Graham for Defendant and Appellant.

Law Offices of Steven J. Hassing and Steven J. Hassing for Plaintiff and Respondent.

Opinion

GOMES, J.—American Motorists Insurance Company (AMIC) appeals from the judgment after court trial in favor of the City of Merced (City) on the City's claim for enforcement of a performance bond. On appeal AMIC contends the court erred in concluding the City suffered damages and the City did not enter into an illegal assignment of its claim against the bond. AMIC also contends construction of the improvements the bond covered released the bond. As we shall explain, we will affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORIES

Sometime prior to 1990, the City adopted the Campus North Specific Plan (Campus North), which encompasses 78 acres in north Merced. Campus North was subdivided into several tracts. The City projected that hundreds of units would be developed in Campus North by various developers.

In September 1991, Grant Homes, Inc. (Grant)[1] entered into a Subdivision Agreement with the City to develop a portion of Campus North referred to as

---

[1] Although the September 1991 Subdivision Agreement states it is between the City and Grant Construction Company, Inc., and does not mention Grant Homes, Inc., the parties at trial and on appeal referred to the entity as Grant Homes. To avoid confusion, we will too.

Campus North Unit No. 1 (Unit No. 1), comprised of 66 units. The agreement required Grant to construct certain improvements within one year. Grant also promised to construct future additional improvements, which the agreement called "deferred work." Deferred work refers to improvements in a large development project intended to mitigate the project's impacts. These improvements are not required to be built in the earlier phases of the project because they are not needed at that time, but may be required later as development progresses. Grant agreed to obtain a performance bond in the amount of $45,000 for its pro rata share of the deferred work specified in the agreement. The City determined Grant's pro rata share by multiplying the total estimated cost of the deferred work by a ratio of the 66 units in Unit No. 1, divided by the 678 total units in Campus North.

In June 1993, Grant entered into a second Subdivision Agreement with the City, this time regarding the installation of improvements in Campus North Unit No. 2 (Unit No. 2), comprised of 43 units. The agreement required Grant to provide a second performance bond covering its pro rata share of the following deferred work:

"A) Realignment of Black Rascal Creek when the vacant property to the south and/or southeast of Rice Court . . . first obtains a Final Map.

"B) Installation of a permanent storm pump station and detention basin when the vacant property to the south and/or [*sic*] of Rice Court . . . first obtains a Final Map or when some other development proposal requires it.

"C) Median and other work in G Street when West El Portal Drive connects to G or when a third final map is recorded in the Campus North Specific Plan Area. The latter shall also result in the extension of West El Portal Drive to G Street.

"D) Deferred improvements for Sundance Drive and bikeway parcel including paving, curb, gutter, sidewalk, bikeway, landscape and irrigation. This work shall be constructed when a third Final Map is recorded in the Campus North Specific Plan area."

The agreed-upon bonded amount for this deferred work was $90,400. In determining the bond amount, the City used the same formula it used for the bond required for Unit No. 1. Although the number of units in Unit No. 2 was fewer than in Unit No. 1, the bond amount increased because the deferred improvements specified in subdivision (D) for Sundance Drive and the bikeway were not included in Unit No. 1's deferred work. On May 21, 1993, AMIC issued a performance bond in the face amount of $90,400, naming the City as obligee, for the deferred work described in the June 1993 Subdivision Agreement.

After Grant completed construction of the homes in Unit No. 2, the City was advised Grant would be unable to perform the deferred work because Grant was insolvent. Union Bank took title to Grant's property and, by deed recorded December 27, 1996, conveyed the remaining undeveloped property within Units No. 1 and No. 2 to Northern California Universal Enterprise Company (NCUEC), an entity owned by Joe Wu. In February 1997, NCUEC deeded the property to Campus Vista, a California limited partnership controlled by Wu.

Before purchasing the property in December 1996, Wu conducted due diligence. Among other things, Wu reviewed the conditions for Grant's subdivision and discussed them with the City. John Franck, the City's Senior Civil Engineer, explained to Wu that Grant was obligated to perform work which had been deferred until the third final map of the area was filed, and if Wu filed a map, it would be the third, triggering map. Jack Lesch, the City's Director of Planning, told Wu if Wu took over the property he would be responsible for finishing Grant's portion of the deferred work. Both Lesch and Franck, however, advised Wu numerous times that Grant's pro rata share of the deferred work was bonded and if Wu agreed to perform Grant's deferred work, the City would make demand on the bonds and use its best efforts to obtain the bond proceeds, which it would pay to Wu to defray his costs in completing Grant's obligations. Wu would not have purchased the property had he not been told the bonding money would be available.

In May 1997, NCUEC and Wu entered into an agreement with the City for zone and general plan changes for the undeveloped property within Unit Nos. 1 and 2. As part of this agreement, Wu promised to perform certain items of deferred work, including all the deferred work Grant was obligated to perform under the June 1993 Subdivision Agreement, as well as additional improvements not within Grant's obligations.

In September 1997, Campus Vista entered into a Subdivision Agreement with the City regarding installation of improvements in a subdivision referred to as Campus Vista, which was within Campus North. The agreement required Campus Vista to provide the City with a $217,988 performance bond for deferred work on extending West El Portal to G Street and for work on G Street, including traffic signal, turn lanes, median and related work, which Wu agreed to perform. This work was deferred until development of Lot 41 or until the City Engineer determined it was necessary.

On November 5, 1997, the City informed Grant its obligations to perform the deferred work listed in its Subdivision Agreements with the City had been triggered by the recent recording of the Campus Vista Subdivision Final Map. The City demanded Grant perform the work. On November 17, 1997, Grant

advised the City it was unable to respond to the request for construction of the deferred items because it was insolvent and had ceased operating months before. On November 24, 1997, and again on December 2, 1997, the City informed AMIC that Grant would not be performing the deferred work and demanded payment on Grant's bond.

On May 18, 1998, the Merced City Council passed a resolution authorizing Wu's attorney, the Law Offices of Steven J. Hassing, to file suit on the City's behalf to enforce Grant's bond obligations. The following day, this lawsuit was filed. The second amended complaint names the City as the plaintiff and AMIC as the defendant, and contains a single cause of action for enforcement of the surety performance bond.

In May 2000, the City filed a separate lawsuit against Campus Vista for breach of contract after Campus Vista refused to complete the deferred work specified in its Subdivision Agreement. The City and Campus Vista settled that lawsuit in July 2000, with Campus Vista agreeing to construct a traffic signal at the corner of West El Portal and G Street according to a schedule set forth in a written settlement agreement and to post a $78,000 cash bond in lieu of its $217,988 performance bond.

In July 2002, the City agreed to pay Campus Vista approximately $132,000 as partial reimbursement for its total cost of constructing the stoplight at West El Portal and G Street. By the time of trial in March 2003, Wu testified he had completed construction of Grant's deferred work, with the exception of the bicycle path. Wu spent $715,879 in completing all of the common area improvements. The City did not actually perform any of the deferred work, and therefore did not incur any expense in constructing the improvements.

Following a court trial, the court orally issued a tentative decision finding in the City's favor on its claim. The City submitted a proposed statement of decision; in turn, AMIC filed opposition to the proposed statement of decision which also requested the court to address additional questions. The court adopted the proposed statement of decision without change.

The trial court entered judgment in the City's favor in the amount of $141,199.77, representing principal of $90,400, plus $50,799.77 in interest. The judgment further stated the City was the prevailing party and the judgment could be amended in due course to include costs and attorney fees. AMIC filed a notice of appeal from this judgment.[2]

[2] AMIC filed a request for judicial notice with its opening brief requesting us to take judicial notice of the following: (1) a complaint for enforcement of surety bond filed on April 29, 1998, in *Campus Vista v. American Motorists Insurance Co. et al.* (Super Ct. Merced County, No. 139875); (2) a complaint for breach of contract and common counts filed on January 7,

## DISCUSSION

In its statement of decision, the trial court addressed and rejected various defenses AMIC raised. These defenses were: 1) a May 1994 subdivision status inquiry released the bond; 2) the City did not suffer damages; 3) the agreement between Wu and the City whereby the City agreed to pay Wu the proceeds from this lawsuit constitutes an illegal assignment; 4) that same agreement is unenforceable; and 5) the City waived any claims against AMIC in this case when it settled another lawsuit brought against AMIC concerning a performance bond which pertained to the same improvements as the bond in the current case.

On appeal, AMIC addresses only two of these issues: 1) whether the City suffered damages; and 2) whether the agreement between Wu and the City constituted an illegal assignment. AMIC also contends, apparently for the first time on appeal, that Wu's performance of Grant's share of the deferred work effectively released the bond.

### A. *Standard of Review*

The parties disagree on the appropriate standard of review. The City contends the substantial evidence standard of review applies because the trial court's decision involved the resolution of factual issues. AMIC, however, is not challenging the sufficiency of the evidence. In its opening brief, AMIC states that the appeal "involves legal issues which are reviewed de novo" and that the trial court erred in awarding bond proceeds to the City "under the undisputed facts of this case." AMIC contends review is de novo because it involves the interpretation of contracts and statutes.

Since AMIC is not challenging the sufficiency of the evidence, we will accept the facts the trial court found in its statement of decision and determine whether those factual findings support the judgment as a matter of law. (See *Emma Corp. v. Inglewood Unified School Dist.* (2004) 114 Cal.App.4th 1018, 1020–1021 [8 Cal.Rptr.3d 213].) In doing so, we keep in mind that where a statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the trial court's determination. (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358 [236 Cal.Rptr. 543].) We also keep in mind the well-settled principle that " '[a] judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the

2002, in *Campus Vista Estates v. E. A. Hathaway & Co. et al.* (Super. Ct. Merced County, No. 145596); and (3) Merced Municipal Code, title 17, chapter 17.62. As the City has filed no opposition to the request, we now grant it.

record is silent, and error must be affirmatively shown. . . .' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Accordingly, AMIC has the burden of affirmatively showing error. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].)

## B. *Damages and Performance*

At trial, AMIC contended the City suffered no damages. The trial court rejected this contention on two grounds: 1) the City was damaged when Grant refused the City's demand to perform and the damages were measurable by the cost of completing Grant's share of the deferred work; and 2) the City incurred actual costs as a result of Grant's breach, as shown by the time it spent negotiating with Wu and other developers, the lawsuit it brought against Campus Vista to cause it to finish the work, and its payment of $132,000 to Campus Vista in partial reimbursement for its construction costs for the stoplight at West El Portal and G Street. AMIC challenges each of these grounds on appeal.

■ A public entity requires a performance bond "because of its potential liability for injury to persons or property which might result from dangerous or defective conditions created by the failure of completion of required improvements." (*Berman v. Aetna Cas. & Surety Co.* (1974) 40 Cal.App.3d 908, 911 [115 Cal.Rptr. 566]; see also *County of Los Angeles v. Margulis* (1935) 6 Cal.App.2d 57, 59 [44 P.2d 608].) When a subdivider who is contractually responsible for constructing public improvements fails to perform, the public entity's damages are measured by a sum equal to the cost of the uncompleted portion of the work and the surety on the performance bond is liable under the bond up to the bond amount. (*County of Los Angeles v. Margulis, supra,* at p. 60.) Put another way, the public entity's damages are measurable by the value of its unfulfilled right, i.e., the cost of bringing the subdivision into compliance by installing the bargained-for improvements. (*City of Sacramento v. Trans Pacific Industries, Inc.* (1979) 98 Cal.App.3d 389, 397 [159 Cal.Rptr. 514] (*City of Sacramento*).) These damages exist even if the public entity has not actually completed the improvements. (*County of Los Angeles v. Margulis, supra,* 6 Cal.App.2d at p. 60.)[3]

Here, Grant agreed to be responsible for its pro rata share of the deferred work obligations specified in the June 1993 Subdivision Agreement, which the City determined by the number of units Grant was developing within

---

[3] AMIC contends that a surety's obligation arises when the obligee sustains an out-of-pocket loss as a consequence of the principal's fault, citing *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28 [86 Cal.Rptr.2d 855, 980 P.2d 407]. Nothing in *Cates*, however, supports this proposition.

Campus North in Unit No. 2. Based on this agreement, the City had a contractual right to have Grant participate in performing its share of the deferred work. When the time came for Grant to perform, the City made demand on Grant, but Grant failed to perform. Although Grant had completed construction of Unit No. 2, the deferred work was not completed. Based on the above authorities, the City was damaged when Grant failed to perform, its damages are measured by Grant's share of the cost of the uncompleted portion of the work, and AMIC is liable under the bond up to the bond amount.

■ AMIC contends the City was not damaged by Grant's refusal to perform because Wu agreed to perform Grant's share of the deferred work, at no cost to the City, *before* Grant's time to perform arose. Wu's agreement, however, does not mean the City was not damaged when Grant refused to perform. This is because the City continued to have a contractual right to look to Grant to perform its share of the deferred work despite its agreement with Wu. Once the triggering event for Grant's deferred work obligations occurred, i.e., the third final map was recorded, the City, having promised Wu it would attempt to collect on Grant's bond, demanded performance from Grant, but Grant failed to perform.[4] That the City had a right at that point in time to also demand that Wu perform Grant's share of the deferred work does not mean that Grant's failure to perform did not damage the City, since Wu only promised to be responsible for Grant's share of the improvements based on the City's unconditional promise to repay him if it prevailed in its action against AMIC. (See *City of Sacramento, supra,* 98 Cal.App.3d at p. 397.)

A similar result was reached in *City of Sacramento.* In that case, the city entered into a subdivision agreement with a subdivider which required the subdivider to construct public improvements within one year and provided if it failed to do so, the city had the right to complete any unfinished work and recover its costs in full from the subdivider or its surety. The subdivider was also required to obtain a performance bond. (*City of Sacramento, supra,* 98 Cal.App.3d at pp. 393–394.) The subdivider sold the property to a second subdivider before completing all of the required improvements. After escrow closed, the city learned the second subdivider was the new owner of the property and began negotiations for construction of the improvements. The city informed the second subdivider it did not have funds to install the missing improvements. The city then filed suit against the first subdivider and the surety on the performance bond. Since the city estimated the lawsuit

---

[4] AMIC asserts that the City did not truly expect Grant to perform the deferred work for the benefit of property then owned by Campus Vista. Whether the City expected that Grant would perform, however, is irrelevant, since Grant was contractually obligated to perform. There is nothing in the record to suggest that had Grant been able to perform its obligation, the City would have rejected Grant's performance.

would take two years to complete, the second subdivider entered into an agreement with the city whereby he agreed to construct the improvements in exchange for the city's promise to reimburse him from any judgment it recovered in the lawsuit. (*Id.* at pp. 395–397.) The trial court, following a bench trial, entered judgment in the city's favor. (*Id.* at p. 397.)

On appeal, the defendants argued the city could not recover because it suffered no out-of-pocket damages since the second subdivider agreed to perform the work at no cost to the city unless the city recovered a judgment in the lawsuit. In rejecting this argument, the court concluded the city was damaged when the first subdivider refused to perform after the city demanded it do so, and its damages were measurable by the value of its unfulfilled right, i.e., the cost of bringing the balance of the subdivision into compliance with the contract by installing the bargained-for improvements. (*City of Sacramento, supra,* 98 Cal.App.3d at p. 397.) The court further concluded that the city's damages did not "magically disappear" when the city later entered into the agreement with the second subdivider, since he "did not promise to construct the improvements as a gift; he extracted consideration from the City in the form of City's conditional promise to repay him if it prevailed in its action against defendants." (*Ibid.*)

While we recognize that in *City of Sacramento* the second subdivider agreed to construct the improvements that were the first subdivider's obligation *after* the first subdivider refused to perform and the city filed its lawsuit, whereas here Wu agreed to construct the improvements *before* Grant refused to perform and the City sued, we do not believe this distinction renders the principles stated in *City of Sacramento* inapplicable in this case. Here, as in *City of Sacramento,* the City was not obligated to pay for the improvements itself, but was entitled to have them installed. The City, anticipating that Grant would not be able to perform, had to agree to pay over any proceeds from this lawsuit in order to obtain Wu's promise to construct Grant's share of the deferred work. When Grant refused to perform, the City still had a contractual right to have a fully improved subdivision, and Grant remained obligated to perform the deferred work. The City was still faced with the damages specified in *City of Sacramento*—the cost of completing Grant's share of the deferred work. That the City anticipated it would be faced with these damages and entered into the agreement with Wu before Grant was required to perform does not eliminate the City's damages, since there was no guarantee that Wu would actually complete the work.[5]

---

[5] AMIC's attempt to distinguish *City of Sacramento* on the ground that the city in that case incurred actual expense as a result of the first subdivider's breach fails. The facts of the case show that the city did not have the funds to install the improvements at issue, therefore the second subdivider agreed to construct the improvements in exchange for the city's promise to

The case AMIC relies on, *County of Yuba v. Central Valley Nat. Bank, Inc.* (1971) 20 Cal.App.3d 109 [97 Cal.Rptr. 369] (*County of Yuba*), does not compel a different result. In that case, a builder obtained county approval of his subdivision map for the intended development of a parcel of unimproved agricultural land and supplied an instrument of credit from a bank securing performance of improvement work within the subdivision. The builder, however, never commenced construction of either the subdivision or the improvements. When the county sued the bank due to the builder's failure to install the public improvements, the trial court found on the basis of the language in the instrument of credit and parol evidence that the parties had intended the bank's obligation to be conditional on the builder's initiation of construction on the parcel. Since construction had not commenced, the condition failed, and the bank's obligation never matured. (*Id.* at pp. 112–113.) The court further concluded that the record disclosed the county was not damaged. (*Id.* at pp. 113–114.)

The *County of Yuba* case does not help AMIC because there is no showing here of any unfulfilled condition precedent to AMIC's obligation to pay. In addition, in *County of Yuba* there was no indication the county had any need or intention to use any money recovered in the lawsuit to install the improvements, and the appellate court agreed with the trial court that permitting recovery in such a situation would uphold an illegal forfeiture. (*County of Yuba, supra,* 20 Cal.App.3d at p. 114.) In contrast here, Grant had completed development of Unit No. 2, with the exception of its share of the deferred work, and Wu intended to further develop parcels within Campus North. Thus, there was a need to complete the deferred work. Accordingly, judgment in the City's favor did not constitute a forfeiture, but rather paid for Wu's performance of Grant's unfulfilled obligations. (*City of Sacramento, supra,* 98 Cal.App.3d at pp. 397–398.)

■ To avoid this result, AMIC contends Wu's agreement with the City to construct Grant's portion of the deferred improvements relieved Grant of any obligation to do so because either Wu was a successor to Grant under the June 1993 Subdivision Agreement or Wu's agreements with the City subsumed Grant's obligations or transferred them to Wu. The trial court rejected this argument in the statement of decision, explaining: "[AMIC] provided no authority to support its contention that Wu's agreement to perform Grant's deferred work and Wu's bonding the work relieved Grant or Grant's surety of their obligations. Accordingly, this Court finds that it did not." AMIC also does not cite any legal authority to support these contentions on appeal. When a brief does not contain a legal argument with citation to authority, this court may treat an issue as waived and pass it without consideration.

reimburse him from any judgment it recovered in the lawsuit against the first subdivider. (*City of Sacramento, supra,* 98 Cal.App.3d at pp. 396–397.)

(*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 [23 Cal.Rptr.2d 73].) We do so here.

■ AMIC also contends that once Wu performed Grant's share of the deferred work, the City was not damaged and the bond was released. AMIC reasons that the purpose of the bond was fulfilled once the deferred improvements were built and paid for by anyone other than the City. AMIC, however, did not assert this theory below. "It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory. To permit this change in strategy would be unfair to the trial court and the opposing litigant." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].) We may, however, consider a new theory "when it is purely a matter of applying the law to undisputed facts." (*Ibid.*)

AMIC's theory is based on its assertion that the deferred work had been completed in its entirety. Wu testified at trial, however, that he believed "most of the work" Grant had been obligated to perform had been completed *except* the bicycle path. Thus, it appears that all of Grant's deferred work which the bond secured had not been performed. Had this theory been presented at trial, more facts could have been developed to determine exactly the extent of the work that had or had not been performed. Since this new theory involves an issue of fact, i.e., the extent of performance, and the facts to support the theory were not developed below, we find the argument was waived for failure to raise it in the trial court.

This argument is also waived because AMIC cites no authority to support the proposition that later performance by another subdivider relieves a bonding company of liability under a bond that guaranteed performance by a principal, here Grant.[6] The two statutes AMIC cites do not support this proposition. Civil Code section 2810 provides, in pertinent part, that a surety "is not liable if . . . there is no liability upon the part of the principal at the time of the execution of the contract, or the liability of the principal thereafter ceases . . . ." Thus, AMIC may assert whatever defenses the principal, Grant,

---

[6] AMIC asserts in its reply brief that the bond language does not require the principal to perform the work. We disagree. The bond states, in pertinent part: ". . . if the above bounded Principal . . . shall in all things stand to and abide by and well and truly keep and perform the covenants, conditions and provisions of said improvement requirements, and any lawful modification thereof, on their part; and such work is performed at the time and in the manner specified by the City . . . then this obligation shall become null and void." Thus, the bond requires: (1) the principal, Grant, perform the improvement requirements; and (2) work be performed as the City specifies. Since both conditions must be fulfilled to render the bond null and void, the bond does require the principal to perform the work.

could assert to avoid liability to the bond obligee, the City. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2003), ch. 6I–D, ¶ 6I–86.) AMIC, however, does not cite any authority to support the conclusion that Grant had a valid defense to liability based on Wu's performance of Grant's obligation. Civil Code section 3521 merely states the maxim, "He who takes the benefit must bear the burden." As stated above, this court may treat an issue as waived and pass it without consideration when a brief does not contain a legal argument with citation to authority. (*People v. Stanley, supra,* 10 Cal.4th at p. 793; *Amato v. Mercury Casualty Co., supra,* 18 Cal.App.4th at p. 1794.)

In sum, the City was damaged when Grant breached its obligations to the City by refusing to perform its deferred work obligations on demand. This is true even if the City did not pay out of its own pocket for performance of Grant's share of the deferred work. Since we conclude the trial court did not err in finding the City was damaged by Grant's refusal to perform its deferred work obligations regardless of whether the City incurred actual costs as a result, we need not decide the second ground for the trial court's decision, i.e., whether the City incurred actual costs as a result of Grant's breach.

## C. *Assignment*

AMIC's argument that the agreement between the City and Wu, whereby the City promised to pay any proceeds recovered in this action to Wu if he performed Grant's share of the deferred work, and the City's decision to authorize Wu's attorney to file suit on the City's behalf, constituted an unlawful attempt to assign a public subdivision bond is without merit. The City did not assign to Wu its right to sue on the bond; it merely promised to pay Wu for his work *if* the City was successful in this lawsuit, and authorized his attorney to file suit in the City's name. (*City of Sacramento, supra,* 98 Cal.App.3d at p. 401; *Berman v. Aetna Casualty & Surety Co., supra,* 40 Cal.App.3d at p. 911.) AMIC does not point to anything in the record which suggests the City did not control the litigation of this lawsuit or that Wu's attorney did not act as the City's attorney. The case AMIC relies on, *Morro Palisades Co. v. Hartford Accident & Indemnity Co.* (1959) 52 Cal.2d 397, 401–402 [340 P.2d 628], does not compel a different result because the City here did not attempt to alienate its right to bring the action. (See *City of Sacramento, supra,* 98 Cal.App.3d at p. 401.)

■ AMIC contends for the first time in its reply brief that the trial court erred "in admitting and construing parol evidence of informal conversations instead of interpreting the written contracts between the parties" and "incorrectly admitted and considered oral testimony from Mr. Wu and city officials in violation of the Statute of Frauds." We do not consider arguments raised

for the first time in a reply brief. (*City of Costa Mesa v. Connell* (1999) 74 Cal.App.4th 188, 197 [87 Cal.Rptr.2d 612]; *Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322 [44 Cal.Rptr.2d 902].)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the City.

Buckley, Acting P. J., and Cornell, J., concurred.