[No. B179200. Second Dist., Div. Three. Oct. 20, 2005.]

MANNY STEINBERG et al., Plaintiffs and Appellants, v.
INTERNATIONAL COMMISSION ON HOLOCAUST ERA INSURANCE
CLAIMS, Defendant and Respondent.

**COUNSEL**

Shernoff Bidart Darras, Michael M. Shernoff, Michael L. Cohen; Law Office of Lisa Stern and Lisa Stern for Plaintiffs and Appellans.

Ballard, Spahr, Andrews & Ingersoll, Constantino G. Panagopoulous, Sabrina Rudnick; Weston, Benshoof, Rochefort, Rubalcava & MacCuish, John M. Rochefort and Michael J. Hartley for Defendants and Respondents.

OPINION

**CROSKEY, Acting P. J.**—The foreign policy of the United States with respect to claims for unpaid insurance benefits arising out of the Holocaust era favors settlement over litigation, and provides that the exclusive forum for resolution of such claims should be the International Commission on Holocaust Era Insurance Claims (ICHEIC). While this foreign policy is *reflected* in executive agreements the President signed with Germany and Austria, the policy *itself* extends to claims against insurance companies in nations with which no executive agreement has been executed.

Plaintiffs are Holocaust survivors and their heirs, who have submitted claims to the ICHEIC with respect to Holocaust era insurance policies issued by Assicurazioni Generali (Generali), an Italian insurer. Plaintiffs' claims were processed according to ICHEIC guidelines, and were either denied or diminished. Plaintiffs brought the instant action against ICHEIC, alleging ICHEIC's claims resolution guidelines constitute unfair business practices under California law. Plaintiffs assert that Code of Civil Procedure section 354.5 (section 354.5) provides a statutory basis for their lawsuit. We conclude that section 354.5, which provides that California residents may bring claims arising out of Holocaust era insurance policies in California courts,[1] is preempted by the foreign policy of the United States. The foreign policy of the United States is to favor settlement under ICHEIC's processes. It would undermine this policy if California courts were to subject ICHEIC's established guidelines to regulation under California's unfair business practices law.

## FACTUAL[2] AND PROCEDURAL BACKGROUND

ICHEIC was formed in 1998 by six European insurance companies which have funded its operations. Generali is one of its principal members. ICHEIC was established to process life insurance claims of Holocaust survivors and

---

[1] That statute provides, in pertinent part, "Notwithstanding any other provision of law, any Holocaust victim, or heir or beneficiary of a Holocaust victim, who resides in this state and has a claim arising out of an insurance policy or policies purchased or in effect in Europe before 1945 . . . may bring a legal action to recover on that claim in any superior court of the state . . . ." (Code Civ. Proc., § 354.5, subd. (b).) The statute also provides no such action shall be "dismissed for failure to comply with the applicable statute of limitation, provided the action is commenced on or before December 31, 2010." (Code Civ. Proc., § 354.5, subd. (c).)

[2] As this case involves an appeal from a judgment following an order sustaining a demurrer without leave to amend, we consider the facts alleged in the complaint as true. We note, parenthetically, that evidence submitted by both parties suggests that certain factual allegations of the complaint are erroneous. Nonetheless, on appeal from an order sustaining a demurrer, we assume the truth of plaintiffs' allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

their heirs for unpaid insurance benefits. Its members include three United States insurance regulators (including John Garamendi, the Insurance Commissioner of California) and certain Jewish organizations. It is a private, voluntary association organized under Swiss law.

ICHEIC serves as Generali's agent to process and adjust all Holocaust era claims.[3] Settlement offers are made to claimants based on ICHEIC valuations. Plaintiffs allege the ICHEIC guidelines are being used by Generali to diminish or deny valid claims, to lower Generali's overall exposure. In particular, ICHEIC allows Generali to employ "negative evidence" to deny claims. Specifically, Generali is permitted by ICHEIC to deny a claim if there is no evidence in Generali's files of an applicable policy, even though Generali's records are incomplete or incorrect.[4] This practice, and others,[5] are alleged to constitute unfair business practices under Business and Professions Code section 17200. In reliance on section 354.5,[6] plaintiffs brought a class action on behalf of all "California residents who are . . . Holocaust survivors

---

[3] The evidence indicates that ICHEIC does not, itself, adjust the insurance claims. Instead, ICHEIC forwards the claims to the applicable insurance companies (including Generali) for adjustment according to ICHEIC's guidelines. Whether ICHEIC or Generali adjusts the claims is not relevant to our decision on this appeal.

[4] Again, there is a substantial dispute of fact surrounding this issue. Plaintiffs' complaint contains the following allegation: "For example, if a policyholder's name appears on a [Generali] ledger in 1939 indicating premiums paid for that year, and the same policyholder's name does not appear on a ledger of 1940, [Generali] concludes, under guidelines approved by ICHEIC, that the policy was lapsed, surrendered or cancelled based on this negative evidence. In fact, premiums may have been made or payments of premiums have been excused by virtue of the policyholder being incarcerated in a Nazi concentration camp. In many cases, [Generali] made payment to the Nazi Third Reich government and took the policyholder's name off its ledger by virtue of payment to the Nazis." Yet plaintiffs' *own* evidence indicates ICHEIC's guidelines for payment provide that claims on policies cancelled during the Holocaust for nonpayment of premiums "will be valid for compensation," and that, when payment on a policy was made within the Holocaust period, "the proceeds are deemed to have been either paid into a blocked account or confiscated, unless there is evidence to the contrary." In the case of plaintiff Roman Rakover, which plaintiffs offer as representative of the use of negative evidence, the claim was denied because Generali could find *no record* of the policy in its database, not because the records indicate the policy existed but was no longer valid due to an assumption of lapse, surrender, or payment.

[5] While plaintiffs' appeal focuses exclusively on the practice of negative evidence, plaintiffs' complaint contains allegations of other unfair business practices, including: ICHEIC's aiding of Generali in seeking dismissal of lawsuits in violation of the claimants' right of access to the courts; ICHEIC's design of a Web site that makes it difficult for a survivor claimant to determine if a family member was a Generali policyholder; ICHEIC's approval of misleading letters to be sent to claimants offering settlements that are unreasonably low; ICHEIC's failure to be fair and impartial to claimants of Generali; and ICHEIC's conspiracy with Generali to minimize Generali's payouts and prevent claimants' access to United States courts.

[6] Plaintiffs did not specifically reference section 354.5 in their complaint, or any pleading submitted to the trial court. In their opening brief on appeal, plaintiffs assert that they filed suit "[r]elying on that statute." We may consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts. (*City of Merced v. American Motorists Ins. Co.* (2005)

or their heirs who have filed claims to ICHEIC for life insurance policy benefits due them from Generali and whose claims have been denied or diminished based upon ICHEIC guidelines or decisions." Plaintiffs sought an injunction preventing ICHEIC from using negative evidence and engaging in the other alleged unfair business practices.[7]

.ICHEIC responded with a motion to quash and demurrer. ICHEIC argued its contacts with California provided an insufficient basis for personal jurisdiction. Further, ICHEIC argued adjudication of this dispute was preempted by foreign policy. ICHEIC supported its foreign policy argument with references to executive agreements signed by the President with Germany and Austria, setting forth the United States opinion that Holocaust era insurance disputes should be resolved by settlement rather than litigation, as well as testimony given before a congressional committee reflecting the same sentiment.

Plaintiffs opposed the motion, submitting facts on which they believed personal jurisdiction over ICHEIC could be exercised. As to the foreign policy argument, plaintiffs took the position that, as there was no executive agreement executed with Italy or Generali, there was no foreign policy interest implicated by this case.

The trial court granted the motion and sustained the demurrer without leave to amend. The court concluded this case implicated the foreign relation interests of the United States, whether or not expressly set forth in an executive agreement. As the case involved a matter "which is in the first instance under the primary jurisdiction of our executive branch in conducting the foreign relations of this country," the action was barred. Alternatively, the trial court granted the motion to quash.[8]

---

126 Cal.App.4th 1316, 1327 [24 Cal.Rptr.3d 788].) As the parties have fully briefed and argued the issue of whether section 354.5 is preempted by foreign policy, we consider the issue.

[7] ICHEIC initially removed the action to federal court, on the basis that plaintiffs' claims against it implicate foreign policy. Plaintiffs successfully moved to remand it back to state court, on the theory that ICHEIC's *defense* of federal preemption is insufficient to support federal jurisdiction when plaintiffs' *causes of action* are based only on state law. At oral argument in this appeal, plaintiffs suggested that the federal district court's decision to remand the case was, in some way, a binding rejection of ICHEIC's preemption defense. The contention is meritless; the district court made no ruling on the merits of the preemption defense. Indeed, plaintiffs' argument for remand rested on the theory that the preemption defense could be pursued in state court, a position they repeatedly asserted in their submissions to the federal district court.

[8] The trial court concluded that, although ICHEIC engaged in substantial activity directed toward California, there was an insufficient nexus between that activity and the plaintiffs' allegations. Moreover, the trial court found ICHEIC had met its burden of establishing a

Judgment was entered in favor of ICHEIC and plaintiffs filed a timely notice of appeal.

## CONTENTIONS OF THE PARTIES

On appeal, plaintiffs contend the trial court erred in dismissing the action as preempted by foreign policy. Plaintiffs assert that, since their action is limited to an action against ICHEIC (an entity with which the United States has entered into no agreement) with respect to policies issued by Generali (an insurance company based in Italy, a country with which the United States has entered into no relevant agreement), their action is not preempted by the foreign policy interest reflected in the executive agreements with Germany and Austria.[9] ICHEIC responds that the foreign policy of the United States preempts section 354.5, barring *all* such lawsuits, not merely those that may run afoul of existing international agreements.

## DISCUSSION

### 1. *Standard of Review*

■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

### 2. *The Impact of* American Ins. Assn. v. Garamendi

The United States Supreme Court's most recent pronouncement on the issue of foreign relations preemption involved the conflict between California statutes and the United States foreign policy interest in resolving Holocaust era insurance claims by settlement under ICHEIC guidelines. (*American Ins. Assn. v. Garamendi* (2003) 539 U.S. 396 [156 L.Ed.2d 376, 123 S.Ct. 2374] (hereafter *Garamendi*).) As the *Garamendi* opinion dictates the resolution of this appeal, we discuss it in detail.

---

compelling showing that an exercise of jurisdiction would be unreasonable, in light of the foreign relations interests implicated by the case.

[9] Plaintiffs also assert the trial court erred in granting the motion to quash. As we conclude the action was properly dismissed as preempted, we need not reach this issue.

The *Garamendi* opinion begins with a discussion of the history of World War II reparations. The issue of reparations against Germany was largely postponed after the war, out of fear that reparations would cripple Germany and render it a less effective buffer against communism. (*Garamendi, supra, 539 U.S.* at pp. 403–404.) It was only after Germany was reunified that the moratorium on Holocaust claims by foreign nationals was lifted, and class action suits "poured into United States courts against companies doing business in Germany during the Nazi era." (*Id.* at p. 405.)

German companies and the German government sought peace from these actions, and the United States government took action to resolve them. In July 2000, negotiations resulted in the German Foundation Agreement, by which a fund was established (funded half by German businesses and half by the German government) to compensate all victims. (*Garamendi, supra, 539 U.S.* at p. 405.) The German participation in the Foundation Agreement was conditioned on an expectation of freedom from lawsuits in United States courts. The United States agreed, somewhat ambiguously, to submit a statement in any relevant lawsuit indicating United States foreign policy favors the Foundation as the exclusive forum and remedy for claims against German companies arising from the Holocaust era, although the statement would expressly state that it did not itself provide a legal basis for dismissal. (*Id.* at p. 406.) "As for insurance claims specifically, both countries agreed that the German Foundation would work with [the ICHEIC], a voluntary organization formed in 1998 by several European insurance companies, the State of Israel, Jewish and Holocaust survivor associations, and the National Association of Insurance Commissioners, the organization of American state insurance commissioners. The job of the ICHEIC, chaired by former Secretary of State Eagleburger, includes negotiation with European insurers to provide information about unpaid insurance policies issued to Holocaust victims and settlement of claims brought under them. It has thus set up procedures for handling demands against participating insurers, including 'a reasonable review . . . of the participating companies' files' for production of unpaid policies, 'an investigatory process to determine the current status' of insurance policies for which claims are filed, and a 'claims and valuation process to settle and pay individual claims,' employing 'relaxed standards of proof.' [Citation.] [¶] In the pact with the United States, Germany stipulated that 'insurance claims that come within the scope of the current claims handling procedures adopted by the [ICHEIC] and are made against German insurance companies shall be processed by the companies and the German Insurance Association on the basis of such procedures . . . .' " (*Id.* at pp. 406–407.) "The German Foundation pact has served as a model for similar agreements with Austria and France, and the United States Government continues to pursue comparable agreements with other countries." (*Id.* at p. 408, fn. omitted.)

In the meantime, California was passing its own statutes to address unpaid Holocaust-era insurance policies. California enacted section 354.5, which provides California superior courts with jurisdiction over lawsuits for unpaid Holocaust era insurance claims. California also passed the Holocaust Victim Insurance Relief Act (HVIRA), Insurance Code sections 13800–13807, which required all insurers currently doing business in California to disclose information about all policies sold in Europe between 1920 and 1945 by the insurers and their related entities. (*Garamendi, supra*, 539 U.S. at p. 401.)

"After HVIRA was enacted, administrative subpoenas were issued against several subsidiaries of European insurance companies participating in the ICHEIC." (*Garamendi, supra*, 539 U.S. at p. 411.) In response, Deputy Secretary of Treasury Eizenstat "wrote to the insurance commissioner of California that although HVIRA 'reflects a genuine commitment to justice for Holocaust victims and their families, it has the unfortunate effect of damaging the one effective means now at hand to process quickly and completely unpaid insurance claims from the Holocaust period, the [ICHEIC].' " (*Ibid.*) "The same day, Deputy Secretary Eizenstat also wrote to California's Governor making the same points, and stressing that HVIRA would possibly derail the German Foundation Agreement: 'Clearly, for this deal to work . . . German industry and the German government need to be assured that they will get "legal peace," not just from class-action lawsuits, but from the kind of legislation represented by the [HVIRA].' " (*Ibid.*) "These expressions of the National Government's concern proved to be of no consequence, for the state commissioner announced at an investigatory hearing in December 1999 that he would enforce HVIRA to its fullest, requiring the affected insurers to make the disclosures, leave the State voluntarily, or lose their licenses." (*Id.* at pp. 411–412.)

Several insurance companies, including Generali,[10] brought suit for injunctive relief against the California Insurance Commissioner, challenging the constitutionality of HVIRA. The Supreme Court ultimately concluded HVIRA was preempted because it interfered with the foreign policy of the executive branch.

■ The Supreme Court first noted that "valid executive agreements are fit to preempt state law, just as treaties are, and if the agreements here had expressly preempted laws like HVIRA, the issue would be straightforward." (*Garamendi, supra*, 539 U.S. at pp. 416–417, fn. omitted.) Yet the executive agreements with Germany and Austria contained no preemption clause. The

---

[10] Although the *Garamendi* opinion itself does not identify all involved companies, it is clear from the Ninth Circuit's opinion that Generali was one of the plaintiffs. (*Gerling Global Reinsurance Corp. of America v. Low* (2002) 296 F.3d 832.)

issue presented was therefore whether HVIRA was preempted because of its interference with the foreign policy *embodied in* the agreements. (*Id.* at p. 417.)

■ The court noted a dispute existed between whether "field" or "conflict" preemption should apply in the foreign policy context. That is to say, whether state action with "more than incidental effect on foreign affairs" is preempted, or whether state action is only preempted when it interferes with a " 'specific interest of the Federal Government.' " (*Garamendi, supra,* 539 U.S. at pp. 418–419.) The court found it unnecessary to resolve the dispute as the HVIRA failed the narrower test. The court held that, under the stricter test, "the likelihood that state legislation will produce something more than incidental effect in conflict with express foreign policy of the National Government would require preemption of the state law." (*Id.* at p. 420.)

The court then set forth its analysis under the narrower test. "To begin with, resolving Holocaust-era insurance claims that may be held by residents of this country is a matter well within the Executive's responsibility for foreign affairs." (*Garamendi, supra,* 539 U.S. at p. 420.) Moreover, "[t]he exercise of the federal executive authority means that state law must give way where, as here, there is evidence of clear conflict between the policies adopted by the two." (*Id.* at p. 421.) The historical background to the execution of the agreements demonstrates "that the consistent Presidential foreign policy has been to encourage European governments and companies to volunteer settlement funds in preference to litigation or coercive sanctions." (*Ibid.*) "As for insurance claims in particular, the national position, expressed unmistakably in the executive agreements signed by the President with Germany and Austria, has been to encourage European insurers to work with the ICHEIC to develop acceptable claim procedures, including procedures governing disclosure of policy information." (*Ibid.*) "This position, of which the agreements are exemplars, has also been consistently supported in the high levels of the Executive Branch." (*Id.* at p. 422.)

In contrast, California had taken a position of forced "disclosure and payment, supplemented by a new cause of action for Holocaust survivors if the other sanctions should fail." (*Garamendi, supra,* 539 U.S. at p. 423.) HVIRA's compulsion to disclose more information than required by the ICHEIC's guidelines "undercuts the President's diplomatic discretion and the choice he has made exercising it." (*Id.* at pp. 423–424.) The court recognized that if HVIRA is enforceable, the President would have less economic and diplomatic leverage, and enforceability would ultimately compromise the President's ability to speak for the nation in negotiations with other governments. (*Id.* at p. 424.) In short, the California statute thwarts the Government's "policy of repose for companies that pay through the ICHEIC." (*Id.* at p. 425.)

The Supreme Court held that HVIRA must yield due to the clear conflict. (*Garamendi, supra,* 539 U.S. at p. 425.) "The basic fact is that California seeks to use an iron fist where the President has consistently chosen kid gloves. We have heard powerful arguments that the iron fist would work better, and it may be that if the matter of compensation were considered in isolation from all other issues involving the European Allies, the iron fist would be the preferable policy. But our thoughts on the efficacy of the one approach versus the other are beside the point, since our business is not to judge the wisdom of the National Government's policy; dissatisfaction should be addressed to the President or, perhaps, Congress. The question relevant to preemption in this case is conflict, and the evidence here is 'more than sufficient to demonstrate that the state Act stands in the way of [the President's] diplomatic objectives.' " (*Id.* at p. 427.)

■ As relevant to the instant appeal, the *Garamendi* opinion not only sets forth the relevant test, but applies it. A state may not enforce a statute which interferes with a specific interest of the federal government. To have preemptive effect, the specific interest need not be expressly set forth in an official agreement. An interest *reflected* in official agreements and statements by executive branch officials is sufficient. ■ Moreover, the federal government's "policy of repose for companies that pay through the ICHEIC," is sufficient to preempt a California statute imposing additional duties on European insurers. (*Garamendi, supra,* 539 U.S. at p. 425.) *Garamendi* held that California insurance disclosure laws which require greater disclosure than that required by the ICHEIC are preempted by this foreign policy. Similarly, we must conclude that section 354.5, which provides for private actions arising out of Holocaust era insurance policies, is preempted by the same policy.[11]

In reaction to *Garamendi*, a federal district court dismissed state and common law actions against Generali, concluding that *Garamendi* "requires dismissal . . . of the benefits claims arising under generally applicable state statutes and common law as well as customary international law. Litigation of Holocaust-era insurance claims, no matter the particular source of law under

---

[11] This is particularly true with respect to the instant action, which attempts to change the procedures of ICHEIC *itself*. Clearly, the federal policy in favor of resolution of insurance claims through the procedures of ICHEIC would be derogated by a state action imposing additional claims settling requirements on ICHEIC beyond those arrived upon by negotiation of the parties to ICHEIC. Federal policy favors resolution through the ICHEIC; California cannot impose additional requirements on the insurers.

which the claims arise, necessarily conflicts with the executive policy favoring voluntary resolution of such claims through ICHEIC."[12] (*In re Assicurazioni Generali S.P.A. Holocaust* (S.D.N.Y. 2004) 340 F.Supp.2d 494, 501.)

Plaintiffs suggest that *Garamendi* is distinguishable because their class is limited to policyholders and heirs whose claims were rejected by Generali, an Italian company not subject to the executive agreements signed with Germany and Austria. The distinction is irrelevant. It is not the executive agreements themselves which dictated the result in *Garamendi*, but the policy reflected in them, a policy which extends to claims against Generali.[13] (*In re Assicurazioni Generali S.P.A. Holocaust, supra,* 340 F.Supp.2d at pp. 503–505.)

Plaintiffs rely on *Alperin v. Vatican Bank* (9th Cir. 2005) 410 F.3d 532, petition for certiorari filed September 7, 2005, which allowed an action for recovery of assets looted by the Croatian Ustasha regime, which had been supported by the Nazis. In *Alperin*, the Ninth Circuit found the fact that the State Department did not intervene in the case to imply that the court need not defer to the political branch for resolution of the dispute. (*Id.* at pp. 555–557.) We disagree; under *Garamendi*, it is the foreign policy reflected in the executive agreements that is dispositive, not whether the State Department has chosen to seek dismissal of the lawsuit.

■  Plaintiffs would have the California courts independently determine whether ICHEIC's guidelines violate California's statutory prohibition on unfair business practices, treating as wholly irrelevant the foreign policy expressed in the executive agreements with Germany and Austria as well as statements by executive branch officials. This we cannot do. As set forth at length in *Garamendi*, "the national position . . . has been to encourage European insurers to work with the ICHEIC to develop acceptable claim

---

[12] *Taiheiyo Cement Corp v. Superior Court* (2004) 117 Cal.App.4th 380 [12 Cal.Rptr.3d 32] reaches a similar result with respect to a similar statute. Code of Civil Procedure section 354.6 allows Second World War slave or forced labor victims to bring suits for compensation in California courts. In light of *Garamendi*, Division Eight of the Second District Court of Appeal held the statute was preempted because it conflicted with the foreign policy embodied in a treaty. "While the 1951 Treaty does not expressly preempt [plaintiff]'s claims under section 354.6, it embodies the federal government's foreign policy that claims against Japan and its nationals are to be resolved diplomatically. By encouraging coercive litigation of claims against Japanese nationals, section 354.6 conflicts with the federal policy of diplomacy embodied in the treaty." (117 Cal.App.4th at p. 385.)

[13] We again note that Generali was one of the plaintiffs in *Garamendi*, yet there was no suggestion in the Supreme Court's opinion that HVIRA was not preempted with respect to Generali.

procedures."[14] (*Garamendi, supra,* 539 U.S. at p. 421.) Submitting the ICHEIC's claim procedures to review under California law would express a lack of the respect due the executive branch, and its diplomatic determination that Holocaust era insurance claims are to be resolved through the agreed-upon claim procedures of the ICHEIC. We therefore conclude section 354.5 is preempted, and the plaintiffs' action cannot proceed.

## DISPOSITION

The judgment is affirmed. Plaintiffs are to pay ICHEIC's costs on appeal.

Kitching, J., and Aldrich, J., concurred.

---

[14] While the *Garamendi* opinion is itself sufficient to set forth the national position, we note that the evidence relied on by plaintiffs in this case supports the conclusion. Plaintiffs submitted a 2001 letter written to plaintiffs' counsel by Ambassador Bindenagel, the State Department's Special Envoy for Holocaust Issues. The letter states, in pertinent part, "As a matter of policy, the United States Government believes that the resolution of Nazi-era restitution and compensation matters, including those related to insurance, should be handled through dialogue, negotiation and cooperation, rather than subject victims and their families to the prolonged uncertainty and delay that accompany litigation. *Our longstanding policy of support for ICHEIC* is based on U.S. interests in obtaining a measure of justice for victims, *while preserving and protecting our political and economic relations with our European allies and the State of Israel.* ICHEIC has international recognition as the institution that is charged with establishing a just and fair process that will honor unpaid Holocaust-era insurance policies. *Through cooperative means, ICHEIC has successfully established common standards and procedures* by working together with victims' organizations, state insurance regulators, and participating French, German, Italian, Dutch and Swiss companies. We are continuing to urge all companies with unpaid Holocaust-era insurance policies to join ICHEIC or agree to ICHEIC procedures." (Italics added.)